692 S.E.2d 526

**TOBACCOVILLE USA, INC., Respondent,**

v.

**Henry D. McMASTER, in his Official Capacity as Attorney General of the State of South Carolina, Appellant.**

No. 26799.

Supreme Court of South Carolina.

Heard Jan. 20, 2010.

Decided April 12, 2010.

288

Jonathan B. Williams, David Spencer, T. Parkin Hunter, all of Office of the Attorney General, of Columbia, for Appellant.

Stephen P. Groves, Sr., of Nexsen, Pruet, LLC, of Charleston; Val H. Stieglitz and Amy Harmon Geddes, both of Nexsen, Pruet, LLC, of Columbia, for Respondent.

Chief Justice TOAL.

In this case, the Attorney General (the AG) appeals the administrative law court's (ALC) order compelling production of numerous documents the AG contends are privileged, confidential communications. We certified the appeal pursuant to Rule 204(b), SCACR, and reverse and remand to the ALC for findings in accordance with this opinion.

### FACTS/PROCEDURAL BACKGROUND

In 1998, South Carolina was one of many states to enter into a Master Settlement Agreement (MSA) with certain tobacco companies to settle litigation brought by the states to recover tobacco-related health care expenses. The MSA contained a Model Escrow Statute that South Carolina adopted and codified as the South Carolina Escrow Fund Act at S.C.Code Ann. § 11–47–10, *et. seq.* (Supp.2008). The Escrow Fund Act pro-

vides that a "tobacco product manufacturer"[1] (TPM) that sells cigarettes to consumers within the state must either: (1) join the MSA and make settlement payments required under the MSA, or (2) remain a "non-participating member" and make payments each year to a qualified escrow fund. *Id.* § 11–47–10.

Tobaccoville is an importer and distributor of Seneca brand cigarettes, which are manufactured by Grand River Enterprises Six Nations, Ltd. (Grand River) in Canada. Tobaccoville asserts that it is the exclusive "off-reservation" importer of the Seneca brand, and that Native Wholesale Supply is the exclusive "on-reservation" importer. Based on these and other assertions by Tobaccoville, the AG certified Tobaccoville as a TPM for the Seneca brand in November 2003. Tobaccoville was recertified as a TPM for years 2004 through 2006.

Since that certification, "on-reservation" Seneca cigarettes manufactured by Grand River and distributed by Native Wholesale Supply improperly were being sold "off-reservation" in South Carolina. In April 2007, the AG determined Tobaccoville no longer qualified as a TPM, and that Grand River would have to be certified as a TPM instead if Seneca cigarettes would continue to be sold lawfully in South Carolina. Tobaccoville appealed the AG's determination to the ALC. In the course of discovery, the AG produced thousands of documents and submitted a privilege log indicating numerous documents were confidential and not subject to production. Tobaccoville sought to compel production of some of

---

1. The statute defines a "tobacco product manufacturer" as follows:

(i) "Tobacco product manufacturer" means an entity that after the date of enactment of this act (and not exclusively through any affiliate):

(1) manufactures cigarettes anywhere that such manufacturer intends to be sold in the United States, including cigarettes intended to be sold in the United States through an importer . . .

(2) is the first purchaser anywhere for resale in the United States of cigarettes manufactured anywhere that the manufacturer does not intend to be sold in the United States; or

(3) becomes a successor of an entity described in subitem (1) or (2).

The term "tobacco product manufacturer" does not include an affiliate of a tobacco product manufacturer unless such affiliate itself falls within any of subitems (1)-(3) above.

those documents, arguing that the documents were necessary to properly litigate the case.

■ The ALC found that the documents at issue were properly discoverable and were not privileged. The AG moved for reconsideration and was denied. The AG then appealed to the court of appeals, which dismissed the appeal. The court of appeals, however, later certified this case to this court pursuant to Rule 204(b), SCACR after the AG's petition for rehearing.[2]

## STANDARD OF REVIEW

■ The determination of whether or not a communication is privileged and confidential is a matter for the trial judge to decide after a preliminary inquiry into all the facts and circumstances. *State v. Love*, 275 S.C. 55, 59, 271 S.E.2d 110, 112 (1980). The trial judge's decision will not be overturned absent an abuse of discretion. *Id.*

## ANALYSIS

The AG contends that the documents in issue are not relevant to the subject matter of the case and that they are protected by several privileges. The ALC, however, found that the documents were properly discoverable and were not covered by any privileges. We clarify the applicable privileges and remand for the ALC to make further findings in accordance with this opinion.

### Attorney–Client Privilege

■ The AG asserts the documents in question were covered by the attorney-client privilege, and thus were confidential communications not subject to discovery. The ALC found that because neither the National Association of Attorneys General (the NAAG) nor the other state attorneys general were retained as counsel then there could be no attorney-

---

**2.** While normally a discovery order is not immediately appealable, this Court found S.C.Code Ann. § 1–23–380(A) (Supp.2007) applicable in this case and reinstated the AG's appeal. Section 1–23–380(A) states that "[a] preliminary, procedural, or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."

client relationship upon which to premise the privilege. We disagree.

"The attorney-client privilege protects against disclosure of confidential communications by a client to his attorney." *State v. Owens*, 309 S.C. 402, 407, 424 S.E.2d 473, 476 (1992). "This privilege is based upon a wise policy that considers that the interests of society are best promoted by inviting the utmost confidence on the part of the client in disclosing his secrets to this professional advisor. . . ." *Id.* In *State v. Doster*, this Court explained the attorney-client privilege as follows:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

276 S.C. 647, 651, 284 S.E.2d 218, 219–20 (1981) (citation omitted).

While the relationship the AG has with the NAAG is not the traditional attorney-client relationship envisioned in *Doster*, we nonetheless find that these communications may be covered by the attorney-client privilege. As the ALC noted, the AG has not "retained". the NAAG attorneys in this matter or with respect to the disputed documents. However, the AG is a paid member of the NAAG, and NAAG staff attorneys are available to provide legal advice relating to the MSA and tobacco regulation and enforcement. We find it instructive that one court has previously held that similar documents between a state attorney general and the NAAG were protected by the attorney-client privilege. *See Grand River Enterprise Six Nations, Ltd. v. Pryor,* No. 02 Civ. 5069(JFK)(DFE), 2008 WL 1826490, at \*3 (Apr. 18, 2008 S.D.N.Y.).

Thus we hold that the attorney-client privilege may apply to this very narrow factual scenario because the AG, as a paid member, has solicited the NAAG attorneys for legal advice and consultation on matters relating to the tobacco litigation, the MSA, subsequent enforcement of the MSA, and tobacco regulation. We remand the matter to the ALC to determine

if the allegedly privileged documents are confidential communications pertaining to the above legal matters.

### Attorney Work Product Doctrine

■ The AG also asserts that the documents at issue are protected by the attorney work product doctrine. We disagree.

■ The attorney work product doctrine protects from discovery documents prepared in anticipation of litigation, unless a substantial need can be shown by the requesting party. *See* Rule 26(b)(3), SCRCP; *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Generally, in determining whether a document has been prepared "in anticipation of litigation," most courts look to whether or not the document was prepared because of the prospect of litigation. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc.,* 967 F.2d 980, 984 (4th Cir.1992) (document "must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim," as contrasted to "materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes."); *In re Grand Jury Subpoena,* 357 F.3d 900, 907 (9th Cir.2004) (document "should be deemed 'in anticipation of litigation' ... if ... [it] can be fairly said to have been prepared or obtained because of the prospect of litigation." (citation omitted)); *In re Kaiser Aluminum & Chemical Co.,* 214 F.3d 586, 593 (5th Cir.2000) (primary motivation behind creating the document must be to aid in possible future litigation).

■ Here, to support his contention that the documents are covered by the attorney work product doctrine, the AG merely claims that the privilege applies because the framework of the Escrow Fund Act "contemplates the potential for litigation" and the documents "concern litigation." However, a party must show more than that the statute governing the party's actions considers the possibility of future litigation. The work product doctrine is not implicated here because these documents were not created because of the prospect of litigation, but perhaps more accurately were created because of efforts to enforce a settlement from previous litigation. Thus, we

hold the facts of this case are insufficient to trigger the protection of the attorney work product doctrine.

### Deliberative Process Privilege

The AG claims the documents at issue are also protected from disclosure by the deliberative process privilege. South Carolina courts have not previously addressed whether that privilege is recognized in this state. We decline to adopt this privilege in South Carolina.

### Common Interest Doctrine

■ The AG asserts the common interest doctrine operates to preserve the above privileges when the documents at issue have been shared with the other state attorneys general. South Carolina courts have not previously addressed this doctrine and determined its applicability in this state. We now adopt the common interest doctrine for the narrow factual scenario where several states are parties to a settlement agreement, the state laws that regulate and enforce that settlement all have the same provisions, the attorneys general of those settling states are involved in coordinating regulation and enforcement, and the settling states have executed a common interest agreement.

■ The common interest doctrine is not a privilege in itself, but is instead an exception to the waiver of an existing privilege. The doctrine "protects the transmission of data to which the attorney-client privilege or work product protection has attached" when it is shared between parties with a common interest in a legal matter. John Freeman, *The Common Interest Rule*, 6 S.C. Law. 12 (May/June 1995). It is an exception to the general rule that disclosure of privileged information waives the applicable privilege. *In re Grand Jury Subpoenas*, 902 F.2d 244, 248 (4th Cir.1990). Thus, information covered by the common interest doctrine cannot be waived without the consent of all parties who share the privilege. *Id.*

■ The AG asserts that the states have a common interest in tobacco regulation and the enforcement of the MSA. As proof of this interest, the AG has provided a Common Interest Agreement, which memorializes the states' common interest and the intent that any applicable privileges not be waived by

the sharing of privileged information. Also, the AG provides an affidavit from the Director and Chief Counsel of the NAAG Tobacco Project, stating that the common interest stems from the MSA creation of identical rights and obligations for the settling states.

■ Tobaccoville argues that there is no common interest applicable in this case because the matters at issue are solely revolving around Tobaccoville's TPM certification. This analysis is misguided. Admittedly, the instant lawsuit itself may not be a matter of common interest. However, the inquiry is more properly whether or not the matters discussed in the allegedly privileged documents are matters of common interest. It is irrelevant that the current lawsuit is not of common interest. So long as the documents at issue were covered by an applicable privilege when created, that privilege continues until waived. When the common interest doctrine applies, it operates as an exception to any potential waiver of privilege, regardless of the subject matter of the present litigation.

We find the AG has a common interest with the other settling state attorneys general in matters relating to the MSA and tobacco regulation and litigation.[3] The settling state attorneys general and the NAAG are working together to have uniform tobacco regulations and enforcement of the MSA. Accordingly, if the documents were privileged and thus exempt from production, that privilege was not waived when the AG shared the information with other state attorneys general.

## CONCLUSION

For the foregoing reasons, we reverse the ALC's decision and remand for further determinations made in accordance with this opinion.

BEATTY, KITTREDGE, HEARN, JJ., and Acting Justice JAMES E. MOORE, concur.

---

3. Another court has looked at this identical issue and found that a state attorney general who shared with other state attorneys general privileged information regarding the MSA and communications with the NAAG over tobacco litigation did not waive the applicable privilege because the common interest doctrine applied. *Grand River Enterprise Six Nations, Ltd. v. Pryor,* No. 02 Civ. 5068(JFK)(DFE), 2008 WL 1826490, at *3 (Apr. 18, 2008 S.D.N.Y.).