**STATE FARM FIRE AND CASUALTY COMPANY and Maurice Lavon Robinson, Plaintiffs,**

v.

**ADMIRAL INSURANCE COMPANY, Defendant.**

**Civil Action No. 4:15–2745–RMG**

United States District Court, D. South Carolina, Charleston Division.

Signed 02/04/2016

Kevin Mitchell Barth, Ballenger Barth
and Hoefer, Florence, SC, Linda Weeks

Gangi, Thompson and Henry, Conway, SC, W. James Hoffmeyer, Law Office of W. James Hoffmeyer, Florence, SC, for Plaintiffs.

John Robert Murphy, Timothy J. Newton, Wesley Brian Sawyer, Murphy and Grantland, Columbia, SC, for Defendant.

## ORDER

Richard Mark Gergel, United States District Court Judge

The matter is before the Court on Plaintiff Maurice Robinson's motion to compel Defendant Admiral Insurance Company ("Admiral") to answer certain interrogatories and to produce certain documents. For the reasons given below the motion is granted in part and denied in part.

## I. Background[1]

Mr. Robinson alleges that that Admiral's failure to defend and to indemnify him in an underlying lawsuit was a bad-faith breach of contract. In the underlying lawsuit, James McElveen sought redress for significant physical injuries that he suffered at a fraternity hazing event hosted in Mr. Robinson's home. Admiral provided liability coverage for the fraternity, Phi Beta Sigma, and the fraternity's national president, Jimmy Hammock. State Farm provided homeowner's coverage for Mr. Robinson. Admiral retained J.R. Murphy as coverage counsel, and it retained the Hood Law Firm ("Hood") to defend Phi Beta Sigma and Mr. Hammock. State Farm retained the Hoffmeyer Law Firm to defend Mr. Robinson.

Admiral agreed to settle Mr. McEleevn's claims against Phi Beta Sigma and Mr. Hammock for $500,000 (half of its

$1,000,000 "Each Occurrence" policy limit). Mr. Robinson was not included in that settlement. The insurance company defending Mr. Robinson, State Farm, rejected a settlement offer of $300,000 (its policy limit) and instead chose to go to trial. Mr. McEleeven won a $1,584,000 judgment. State Farm ultimately paid $975,000 to settle that judgment. Mr. Robinson filed this bad-faith action within the Court's diversity jurisdiction, claiming that he was an insured under the Admiral policy and therefore should have been included in the Admiral settlement. State Farm later joined his action to seek recovery for the amounts it paid.

On October 1, 2015, Mr. Robinson served Admiral with interrogatories and requests for production ("RFPs"). Admiral refuses to answer certain interrogatories (numbered 9 and 11) or to produce certain documents responsive to RFPs numbered 2, 3, and 4. Admiral asserts that the withheld documents are protected from discovery by the attorney-client privilege and/or the work product doctrine, and that interrogatory 11 calls for the production of information protected from discovery by the South Carolina Rules of Alternative Dispute Resolution. Admiral also asserts that interrogatory 9 is too vague to answer, while Mr. Robinson asserts that Admiral's answer to interrogatory number 7 is deficient. Mr. Robinson has now brought the present motion to compel answer of the disputed interrogatories and production of the disputed documents.

## II. Standard of Review

■ Rule 26(b)(1) of the Federal Rules of Civil Procedure states:

---

1. The background facts recited here are drawn from Complaint allegations that do not appear to be disputed and from the parties' briefings on the present motion. These background facts serve only to provide context for the dispute *sub judice* and are not findings by the Court.

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 683 (4th Cir. 1986); *Middleton v. Nissan Motor Co.*, No. 10–2529, 2012 WL 3612572, at *2 (D.S.C. Aug. 21, 2012).

### III. Analysis

Mr. Robinson asserts that Admiral's responses to RFPs 1–4 and to Interrogatories 7, 9, and 11 are deficient. Regarding RFPs 2, 3, and 4, he claims that Admiral's assertions of attorney-client privilege and work product doctrine protection are improper as a matter of law. The Court will first address those attorney-client privilege and work product issues. For the reasons given below, the motion to compel as to RFPs 2, 3, and 4 will be denied as to requests for privileged communications between Admiral and Mr. Murphy but otherwise denied without prejudice so that the parties may resolve or at least narrow their disagreement with this Order's guidance on attorney-client privilege and work product doctrine. The Court will then address the other issues raised in the disputes concerning the interrogatories and RFP 1.

### A. Attorney–Client Privilege

In diversity cases, the application of the attorney-client privilege is governed by state law—in this case, the law of South Carolina. Fed. R. Evid. 501; *Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 107 n.5 (4th Cir. 1995). "The attorney-client privilege protects against disclosure of confidential communications by a client to his attorney." *State v. Owens*, 309 S.C. 402, 424 S.E.2d 473, 476 (1992). "[T]he burden of establishing the [attorney-client] privilege rests upon the party asserting it." *Wilson v. Preston*, 378 S.C. 348, 662 S.E.2d 580, 585 (2008).

Admiral has not asserted any good-faith affirmative defense that would place its communications with coverage counsel J.R. Murphy at issue. *See City of Myrtle Beach v. United Nat'l Ins. Co.*, Civ. No. 4:08–1183, 2010 WL 3420044, at *5 (D.S.C. Aug. 27, 2010); (*see also* Answer, Dkt. No. 8, Aug. 26, 2015). Those communications therefore remain privileged. *City of Myrtle Beach*, 2010 WL 3420044, at *5 ("[T]here is no per se waiver of the attorney client privilege simply by a plaintiff making allegations of bad faith."). Indeed, Mr. Robinson's memorandum in support of his motion to compel fails even to articulate a reason why those communications would not be privileged. The Court therefore denies the motion to compel to the extent that it seeks discovery of privileged communications between Admiral and Mr. Murphy.

#### 1. Admiral's Assertion of an Attorney–Client Relationship with Hood

Admiral also asserts that it had an attorney-client relationship with Hood. The burden of demonstrating such a relationship rests with Admiral. *Wilson*, 662

S.E.2d at 585. Admiral, however, fails to cite any relevant authority supporting its assertion that it had an attorney-client relationship with Hood.[2] Instead, Admiral claims that Admiral, Phi Beta Sigma, and Hood shared a "tripartite relationship with respect to the defense of the underlying claim." Admiral cites this Court's decision in *Twin City Fire Insurance* to support of its contention that a "tripartite relationship" is an attorney-client relationship. *See Twin City Fire Ins. Co. v. Ben Arnold–Sunbelt Beverage Co. of S.C., LP,* 336 F.Supp.2d 610 (D.S.C. 2004). The issue in that case was whether "an insured [has] the right to retain independent counsel of its own choosing at the insurer's expense where only a potential for a conflict of interest exists." *Id.* at 621. This Court held that the insured did not have such a right, reasoning that a rule recognizing such a right "would favor insureds who purchase less than full coverage by allowing them to remove the insurance carriers from the case entirely, obtain lawyers of their choosing, and then send the bill to the insurance company." *Id.* That reasoning clearly implies that the insurance company is not a joint client together with the insured. Admiral also cites *Finley v. Home Insurance Company,* a Hawaii Supreme Court case quoted in *Twin City* and the source of the word "tripartite," as "discussing the tripartite relationship." (Def.'s Resp. to Mot. to Compel 4, Jan. 25, 2016, Dkt. No. 23 (citing 975 P.2d 1145, 1153 (Haw. 1998)).) *Finley* does indeed discuss that relationship: "Our holding that the sole client of the attorney is the insured reflects the modern view." 975 P.2d at 1153. Admiral simply fails to meet its bur-

den to demonstrate an attorney-client relationship with Hood.

### 2. The Common Interest Doctrine

Admiral alternatively argues that even if there is no attorney-client relationship between itself and Hood, the communications for which Admiral asserts privilege are nonetheless privileged from production under the common interest doctrine. Before addressing the substance of that doctrine, the Court must determine the threshold question of whether it is available under South Carolina law.

### a. Availability of the Common Interest Doctrine Under South Carolina Law

Admiral asserts that "South Carolina applies the common interest doctrine," citing *Tobaccoville USA, Inc. v. McMaster,* 387 S.C. 287, 692 S.E.2d 526 (2010). (Def.'s Resp. to Mot. to Compel 6.) But *Tobaccoville* adopted the common interest doctrine only for a narrow factual scenario:

> We now adopt the common interest doctrine for the narrow factual scenario where several states are parties to a settlement agreement, the state laws that regulate and enforce that settlement all have the same provisions, the attorneys general of those settling states are involved in coordinating regulation and enforcement, and the settling states have executed a common interest agreement.

692 S.E.2d at 531. No subsequent South Carolina case addresses this issue. Because the South Carolina Supreme "Court limited its decision to the particular facts of the case ... recognition of the common

---

**2.** Admiral quotes at length from *Am. Mut. Liab. Ins. Co. v. Super. Ct.,* 38 Cal.App.3d 579, 113 Cal.Rptr. 561 (1974), but the value of a 1974 California intermediate appellate decision in deciding a question of South Carolina

law in 2016 is dubious. That case has never been cited by any South Carolina court or by any Federal court interpreting South Carolina law.

interest doctrine in criminal or civil cases in South Carolina remains unresolved." Nathan M. Crystal, *Confidentiality, Privilege, and Work Product: Some Important Differences*, S.C. Law., July 2013, at 9, 10. However, "[t]he principles of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), require a federal court in a diversity case to respect and enforce state-created rights in a manner such that litigation of state-based rights in federal court does not yield results materially different from those attained in the state courts." *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1416 (4th Cir. 1992) (parallel citations omitted). The Court therefore must decide whether the South Carolina Supreme Court would apply the common interest doctrine to the scenario presented by this case—a confidential relationship between an insurer, an insured, and counsel retained by the insurer for the insured. The Court concludes that it would, for three reasons.

First, most if not all states have adopted some version of the common interest doctrine. *See, e.g.,* Katharine Traylor Schaffzin, *An Uncertain Privilege. Why the Common Interest Doctrine Does Not Work and How Uniformity Can Fix It*, 15 B.U. Pub. Int. L.J. 49, 52–53 n.7 (2005) (listing jurisdictions that have adopted the common interest doctrine as of 2005); Restatement (Third) of the Law Governing Lawyers § 76 (2000).[3] Although there are differences between state rules regarding the scope of the doctrine, such as whether interests must be similar or identical, or whether litigation must be actual or anticipated, the Court has found no example of a state completely rejecting the common interest doctrine.

Second, the South Carolina Supreme Court relied upon Fourth Circuit case law when considering the common interest doctrine in *Tobaccoville*. 692 S.E.2d at 531 (citing no case other than *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990) in the section on the common interest doctrine). Application of the common interest doctrine to the relationship at issue in this case is the position most consistent with Fourth Circuit case law— were this not a diversity case, there is no question that the doctrine would be applicable. *See In re Grand Jury Subpoenas*, 902 F.2d at 249–50. If the South Carolina Supreme Court meant to exclude insurers from the common interest doctrine, then it likely would not have rested its discussion of that doctrine on a case held to encompass insurers. *See, e.g., Front Royal Ins. Co. v. Gold Players, Inc.*, 187 F.R.D. 252, 258 (W.D. Va. 1999) (regarding relationship between an insurer and a reinsurer).

■ Third, strong policy reasons support application of the common interest doctrine to the relationship between an insurer, insured, and the attorney retained by the insurer for the insured. "[T]he need to protect the free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter." *In re Grand Jury Subpoenas*, 902 F.2d at 249 (internal quotation marks omitted). In the insurer-insured-attorney relationship, the attorney is engaged by the insurer to protect the insurer's and insured's common interest in avoiding an adverse judgment. It would be illogical to hold that communication between an attorney and the person who selects the attorney, pays the attorney,

---

**3.** The New Jersey Supreme Court noted (in a decision adopting the doctrine) that "[f]ar less than a majority of state and federal courts have affirmatively adopted the common interest rule," citing Prof. Schaffzin's article (which lists fewer than 25 adopting states), *O'Boyle v. Borough of Longport*, 218 N.J. 168, 94 A.3d 299, 318 n.3 (2014), but her listing is not exhaustive, *e.g.,* Wis. Stat. § 905.03 (Wisconsin adopting the doctrine but not listed).

and would be responsible for paying an adverse judgment—and consequently controls settlement decisions—waives confidentiality, even where the insurer is not, strictly speaking, the attorney's client. Hindering communications between the attorney and the person with settlement authority for his client would serve to delay or discourage settlements, a result contrary to South Carolina policy: "South Carolina courts encourage [settlement] agreements because they avoid costly litigation and delay to an injured party." *St. Paul Travelers v. Payne*, 444 F.Supp.2d 519, 521 (D.S.C. 2006) (citing *Poston by Poston v. Barnes*, 294 S.C. 261, 363 S.E.2d 888, 890 (1987).

### b. Scope of the Common Interest Doctrine

 Having concluded that the common interest doctrine is available, the Court must determine the scope of its protection. The South Carolina Supreme Court provides:

> The common interest doctrine is not a privilege in itself, but is instead an exception to the waiver of an existing privilege. The doctrine "protects the transmission of data to which the attorney-client privilege or work product protection has attached" when it is shared between parties with a common interest in a legal matter. It is an exception to the general rule that disclosure of privileged information waives the applicable privilege. Thus, information covered by the common interest doctrine cannot be waived without the consent of all parties who share the privilege

*Tobaccoville*, 692 S.E.2d at 531 (citations omitted). Thus, Hood's disclosure of privileged information regarding an actual litigation in which Admiral and its insured had essentially identical interests does not waive the attorney-client privilege between Hood and the insured.

 But the common interest doctrine protects a narrower range of communications between Admiral and Hood than would be privileged if Admiral were Hood's client.[4] A common interest does not create an attorney-client relationship, rather, the "common interest rule presupposes the existence of an otherwise valid privilege, and the rule applies not only to communications subject to the attorney-client privilege." *In re Grand Jury Subpoenas*, 902 F.2d at 249. So communications from Admiral to Hood are *privileged* only to the extent such communications retransmit privileged information disclosed by Hood (although a broader set of communications might be protected as work product). For example, a client-attorney relationship between Phi Beta Sigma and Hood would not privilege a hypothetical letter from Admiral to Hood stating, "We are unwilling to cover a settlement of claims against our insured Mr. Robinson," given that a different insurance company retained a different lawyer to defend Mr. Robinson and that it was not a joint defense (although such a letter might be ordinary work product). Similarly, direct communications between the insurer and the insured not involving legal counsel may be incidents of their commercial relationship and not privileged attorney-client communications.

Admiral's privilege log lacks detail sufficient for the Court to determine precisely

---

4. And the doctrine offers no protection to communications that would not be protected even if Admiral were Hood's client—*e.g.*, Admiral's privilege log entries 123 and 124, with the description "invoice," do not appear to be covered by attorney-client privilege at all. *See United States v. (Under Seal)*, 774 F.2d 624, 628 (4th Cir. 1985) ("The attorney-client privilege normally does not extend to the payment of attorney's fees and expenses.").

which documents, for which the attorney-client privilege has been asserted, are in fact privileged from discovery under the common interest doctrine. Moreover, it is possible that some documents containing privileged information should be redacted rather than entirely withheld, and it does not appear that the parties have engaged in discussions regarding possible redactions. Moreover again, many documents that arguably fall within the common interest doctrine are likely to be clearly within the work product doctrine, obviating the need to assess privilege if the Plaintiff cannot show a substantial need for production. Therefore, regarding those communications between Admiral and Hood or Phi Beta Sigma for which the attorney-client privilege has been asserted, the Court denies the motion to compel without prejudice, so that the parties, informed by this Order, may confer to resolve these issues.

### B. Work product doctrine

■ Federal law governs the work product doctrine. The doctrine protects from discovery any "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative (including the ... party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The party claiming work product protection has the burden of establishing entitlement to the protection. *In re Martin Marietta Corp.*, 856 F.2d 619, 626 (4th Cir. 1988). By the plain text of the Rule, an insurer may claim the protection of the work product doctrine—an attorney-client relationship is unnecessary.

■ "The application of the work product doctrine is particularly difficult in the context of insurance claims." *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 536, 541–42 (N.D. W. Va. 2000). "[I]nsurance companies have a duty to investigate, evaluate, and adjust claims made by their insureds. The creation of documents during this process is part of the ordinary course of business of insurance companies, and the fact that litigation is pending or may eventually ensue does not cloak such documents with work-product protection." *HSS Enters., LLC v. Amco Ins. Co.*, No. C06–1485–JPD, 2008 WL 163669, at *4 (W.D. Wash. Jan. 14, 2008) (citation omitted). "Because an insurance company has a duty in the ordinary course of business to investigate and evaluate claims made by its insureds, the claims files containing such documents usually cannot be entitled to work product protection." *Pete Rinaldi's Fast Foods, Inc. v. Great Am. Ins. Cos.*, 123 F.R.D. 198, 202 (M.D.N.C. 1988); *see also St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 636 (N.D. Iowa 2000) ("[A]n insurer's investigation of whether coverage exists is required and the conduct of that much of its investigation is assuredly in the ordinary course of its business, not 'in anticipation of litigation.' ").

■ For the work product doctrine to apply, "[t]he document must be prepared because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992). The proponent of work product protection must establish that the "driving force behind the preparation of each requested document" is the prospect of litigation. *Id.*

■ There are two types of work product: opinion work product and ordinary work product. Opinion work product involves "mental impressions, conclusions, opinions, or legal theories ... concerning the litigation [and] is immune to the same

extent as an attorney-client communication. This is so whether the material was actually prepared by the attorney or by another representative of the party." *Id.* at 984 (internal quotation marks and citations omitted). Ordinary work product, or "[a]ll other documents and tangible things prepared in anticipation of litigation or for trial[,] may be discovered, but only on a showing of substantial need." *Id.* (internal quotation marks omitted).

 Turning to the present motion to compel, Mr. Robinson's entire objection to Admiral's assertion of the work product doctrine is an error:

> Counsel for Plaintiff concedes that documents prepared in anticipation of litigation would be protected. However, the documents being sought by the Plaintiff were not prepared in anticipation of THIS litigation.... Counsel for Plaintiff has been unable to locate any legal authority which stands for the proposition that a document prepared in anticipation of ANY litigation would be protected from disclosure under this privilege [*sic*] in ALL litigation.

(Mem. in Support of Mot. to Compel 7, Dec. 23, 2015, Dkt. No. 19–1.) In this Circuit, the legal authority which stands for that proposition is *Duplan Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480, 483 (4th Cir. 1973) (holding that work product documents do not lose their qualified immunity from discovery in subsequent and unrelated litigation).

Since Mr. Robinson concedes that documents prepared in anticipation of litigation are protected by the work product doctrine and attempts no showing of substantial need for production of those documents, the Court is called upon only to identify documents prepared in anticipation of litigation.

Clearly, many of Admiral's documentary communications with Hood regarding the underlying litigation were prepared because of or in anticipation of that litigation and are therefore covered by the work product doctrine. Indeed, the documents most salient to Mr. Robinson's claims—documents that express an opinion as to why he should or should not be included in a settlement agreement—likely are undiscoverable attorney opinion work product, if such documents exist. Other documents lack a description sufficient to justify a work product claim. For example, Admiral 1602–04 are described as from Susan Kruse (a claims superintendent) to "Admiral Internal Document" (presumably, to file), with description "File Strategy." There is no suggestion that Admiral 1602–04 were not created in the ordinary course of business, other than the assertion of work product protection and attorney-client privilege (which difficult to accept where no attorney is listed). The claims file itself is not necessarily work product, *see Pete Rinaldi's Fast Foods*, 123 F.R.D. at 202, and the Court cannot determine precisely which documents on Admiral's privilege log are or are not protected work product, nor is it entirely clear which documents Mr. Robinson seeks. Therefore, the Court denies the motion to compel production of those documents without prejudice, so that the parties may confer to resolve any disputes regarding particular documents not resolved by this Order.

## C. Other Alleged Discovery Response Deficiencies

Mr. Robinson also alleges certain other discovery response deficiencies in which Admiral's objections do not rest on claims of attorney-client privilege or work product protection.

### 1. Interrogatory 7

 Interrogatory 7 asks Admiral to "[p]lease outline, in detail, each and every

contention of Defendant substantiating Defendant's decision not to include Robinson in the settlement Release with McElveen, and substantiating Defendant's decision not to defend or indemnify Robinson ...." (Pls.' Mot. to Compel Ex. 3, at 7–8 (Def.'s Answers to Interrogatories), Dkt. No. 19–3.) Admiral responded that it contends that it had no duty to defend Mr. Robinson because of a provision in the insurance policy eliminating that duty where another insurance company also has a duty to defend the insured, and because of exclusions for assault and/or battery, for hazing, and for violations of membership intake process policy. (*Id.* at 7–8.) Admiral's answer detailed the bases for those contentions. (*Id.*) Mr. Robinson claims that Admiral's response "did not, however, answer the interrogatory." (Pls.' Mem. in support of Mot. Compel 3.) Mr. Robinson does not elaborate as to why Admiral's response was deficient. Instead, his motion hints that he was expecting the response to provide details of the settlement discussions. This is a contention interrogatory, however, not a fact interrogatory. Admiral is not obliged to make contentions chosen by Mr. Robinson. The Court does not see a deficiency in Admiral's response to this interrogatory, and therefore denies the motion to compel as it relates to this interrogatory.

## 2. Interrogatory 9

■■■■ Interrogatory 9 asks Admiral to "[p]lease provide a detailed chronological explanation of the transactions and activities of the Defendant through its agents, servants and employees rendered as it relates to the allegations in the Plaintiff Robinson's Complaint." (Def.'s' Answers to Interrogatories 8.) Admiral's response to this interrogatory is only a nonspecific, boilerplate objection: "Defendant objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, vague, and seeks information that is or may be protected." (*Id.* at 9.) But Rule 33(b)(4) of the Federal Rules of Civil Procedure requires that "the grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Boilerplate, general objections standing alone waive any actual, specific objections. *See, e.g., Mancia v. Mayflower Textile Servs. Co.,* 253 F.R.D. 354, 358–59, 364 (D. Md. 2008) (specifically criticizing the practice of asserting general objections as a failure to comply with Rules 26(g) and 33(b)(4) and collecting cases making the same criticism). Admiral has therefore waived its objections to this interrogatory.

■■■■ But Admiral's wavier of objections is not sufficient to grant Mr. Robinson's motion to compel. Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure requires the Court, *sua sponte,* to "limit the ... extent of discovery otherwise allowed ... if it determines that ... the burden or expense of the proposed discovery outweighs its likely benefit." In response to the motion to compel, Admiral argues that Interrogatory 9 is too vague to answer.[5] If the interrogatory is in fact too vague to answer, then pursuant to Rule 26(b)(2)(C) the Court should not compel an attempt to answer despite Admiral's waiver.

The interrogatory essentially asks Admiral to explain its actions that are related to the Complaint allegations, and to present that explanation in order from first in time to latest. But "relate[d] to the allegations" is too vague to understand without guess-

---

**5.** Admiral's argument in its response is an example of an objection made with specificity. But it is not timely raised when first asserted in a response to a motion to compel.

ing. For example, the third allegation is that "Admiral Insurance Company is upon information and belief an insurance company . . . ." (Compl. ¶ 3.) Admiral can hardly be expected to "explain" every "activity" related to that allegation. It is for Plaintiff to say, not for Defendant to guess, which Complaint allegations are relevant to this interrogatory. Obviously, the relevant issue is the decision not to indemnify Mr. Robinson. Mr. Robinson could have asked for that. Instead, he chose to cast a broader net. That decision is not impermissible, *a priori*, but with this particular interrogatory it is impossible, *a fortiori*, to determine just how broadly the net has been cast.

The interrogatory is too vague to answer, but Admiral waived its objection it. Therefore, the Court denies Mr. Robinson's motion without prejudice with regard to interrogatory number 9, so that Mr. Robinson can communicate the interrogatory more clearly through the meet-and-confer process. The Court expects that the parties will be able to resolve the scope of Interrogatory 9 without further need for guidance from the Court.

### 3. Interrogatory 11

Interrogatory 11 asks, "[p]lease outline, in detail, all settlement discussions between Defendant, Defendant's counsel, and counsel for McElveen in the underlying action." (Def.'s Answers to Interrogatories 9.) Admiral's only objection to this interrogatory is that it seeks information that Admiral claims Rule 8 of the South Carolina Alternative Dispute Rules ("Rule 8") protects. (*Id.*)

Rule 8 prohibits parties to (and other persons present at) a mediation from introducing oral or written communications that occurred within that mediation as evidence in a judicial proceeding. S.C.A.D.R. Rule 8(a). Admiral argues that rule prohibits any discovery "relating to Admiral's

settlement negotiations with McElveen's attorney." But by its express terms the rule only applies to the parties and to other persons present at the mediation. Mr. Robinson was not a party to the mediation, and from the record it appears that he was not present. Therefore, he is not barred from introducing into evidence discussions from the settlement. Furthermore, Rule 8(d), which provides that "[n]o communication by a party or attorney to the mediator in private session shall operate to waive any attorney-client privilege" would be superfluous if, as Admiral claims, Rule 8 privileges all mediation discussions.

Rule 8 also enumerates certain exceptions to the confidentiality of mediation discussions. One of those exceptions is "[t]his rule does not prohibit . . . [a]ny disclosures required by law." S.C.A.D.R. Rule 8(b). Mr. Robinson is entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) & 33(a)(2). Admiral has not objected to the relevance or proportionality of this interrogatory. And the law requires Admiral to answer interrogatories. Fed. R. Civ. P. 33(b)(1) ("The interrogatories must be answered . . . ."). So an answer to Interrogatory 11 is a disclosure "required by law" that Rule 8 expressly excludes from its confidentiality provision.

Rule 8 does not prevent Mr. Robinson from offering settlement discussions into evidence and it permits Admiral to disclose those communications in response to Interrogatory 11. The Court therefore grants the motion to compel Admiral to answer Interrogatory 11, with the exception of information protected by the attorney-client privilege.

### 4. Request for Production 1

Mr. Robinson presents no dispute regarding RFP 1 requiring adjudication. Ad-

miral asserts that it will produce documents responsive to RFP 1 upon entry of a confidentiality order, and it represents that negotiations of the terms of such an order are in progress. Mr. Robinson does not object to a confidentiality order. The Court will therefore deny the motion to compel as to Plaintiff's Request for Production ("RFP") 1 without prejudice.

### D. Apportionment of Reasonable Expenses

Mr. Robinson seeks sanctions against Admiral in the form of an award for costs pursuant to Rule 37(a)(5) of the Federal Rules of Civil Procedure. When a motion to compel is granted in part and denied in part, the court may, but is not required to, apportion reasonable expenses between the parties. Fed. R. Civ. P. 37(a)(5)(C). The Court does not find cause to award expenses to any party regarding the instant motion.

### IV. Conclusion

For the foregoing reasons, Plaintiff's Motion to Compel (Dkt. No. 19) is **DENIED** as to Interrogatory number 7, **GRANTED** as to Interrogatory number 11, **DENIED** as to the request for sanctions, and **DENIED WITHOUT PREJUDICE** as to all other relief requested.

**AND IT IS SO ORDERED.**

