2017 IL App (1st) 151572

FOURTH DIVISION
December 7, 2017

No. 1-15-1572

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| FRANK SELBY, MARTIN YOUNG, ADRIANA LOPEZ, and KATHERINE SCHEIWE, n/k/a Katherine Polk, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | |
| JAMES M. O'DEA, Individually and d/b/a James M. O'Dea & Associates, and STATE FARM MUTUAL AUTO INSURANCE COMPANY | ) ) ) ) | No. 10 CH 43684 |
| Defendants, | ) ) | |
| (State Farm Mutual Auto Insurance Company, | ) ) | Honorable Sebastian T. Patti, Honorable Richard J. Billik, & Honorable Rodolfo Garcia |
| Defendant-Appellee). | ) | Judges Presiding |

JUSTICE ELLIS delivered the judgment of the court, with opinion.
Presiding Justice Burke and Justice McBride concurred in the judgment and opinion.

**OPINION**

¶ 1    When parties on the same side of a lawsuit wish to strategize to defeat their common litigation opponent, they may meet together and share information that would otherwise be privileged under the attorney-client or work-product doctrines. A lawyer may share privileged information from his or her client with the other party's lawyer. One party may speak to the other

party's lawyer. One client may speak to the other client, in the presence of the lawyers. When these communications occur, the parties risk waiving privileges because they are disclosing privileged information to third parties—the other client and the other client's lawyer.

¶ 2    This case requires us to decide whether two codefendants to a lawsuit waived these privileges when they met and shared information about that lawsuit as part of a "joint defense agreement" they executed.

¶ 3    Federal courts and many state courts have recognized an exception to the waiver rule in this context, protecting the confidentiality of these joint communications as to third parties. Other states have codified this exception to the waiver rule into statute. Surprisingly, no published decision in Illinois has ever decided whether parties with a common interest in defeating a litigation opponent may share and pool information without waiving their attorney-client and work-product privileges as to third parties.

¶ 4    After considering our supreme court's decisions on related issues and taking into account case law from other jurisdictions, we likewise recognize a common-interest exception to the waiver rule. As in virtually every other jurisdiction, we hold that coparties in a case who agree to share information pursuant to their common interest in defeating their litigation opponent do not waive either the attorney-client or work-product privilege when they do so.

¶ 5    While we agree with the trial court's recognition of this common-interest exception to the waiver rule, we remand this matter to the trial court to conduct an *in camera*, communication-by-communication review of the challenged conversations involving the codefendants and their attorneys. We vacate the trial court's dispositive rulings—the dismissal of one count, the grant of summary judgment on two others—pending the outcome of the *in camera* review, given the possibility that additional facts may become discoverable after that review.

¶ 6                                                    I

¶ 7    Between 2006 and 2009, State Farm Mutual Auto Insurance Company (State Farm) filed a series of subrogation lawsuits through its counsel, James M. O'Dea, individually and doing business as James M. O'Dea & Associates, including suits against Frank Selby, Martin Young, Adriana Lopez, and Katherine Scheiwe, now known as Katherine Polk. In October 2010, these four individuals, as named plaintiffs, filed a purported class-action lawsuit in which they claim that their subrogation lawsuits were part of "a large scale scheme perpetrated by defendants in subrogation lawsuits" to obtain "fraudulent default judgments" against subrogation defendants "by circumventing the State of Illinois [r]ules governing service of process."

¶ 8    In sum, plaintiffs claimed that O'Dea, an attorney engaged by State Farm in its subrogation cases, was bypassing the office of the sheriff of Cook County for the purposes of service of summons, using unlicensed process servers, and obtaining default judgments without service of process, resulting in the suspension of their drivers' licenses based on these void judgments and requiring them to take steps to vacate their default judgments. The complaint further alleged an overall scheme involving State Farm and claimed that this scheme was financed by State Farm's payment of invoices from O'Dea for sheriff's fees—fees that were never incurred, permitting O'Dea to retain these funds for his own use.

¶ 9    Relevant to this appeal, plaintiffs sued State Farm for abuse of process, civil conspiracy, and malicious prosecution. The trial court dismissed the abuse-of-process claims for failure to state a claim. The court later entered summary judgment on the claims of civil conspiracy and malicious prosecution. The action is still pending in the trial court against O'Dea. This appeal only concerns the judgments as to State Farm.

¶ 10 Plaintiffs appeal from several of the circuit court's orders, including the court's application of the "joint legal defense privilege," other discovery orders, the dismissal of plaintiffs' abuse-of-process action against State Farm for failure to state a claim, and grant of summary judgment on plaintiffs' claims of civil conspiracy and malicious prosecution.

¶ 11 Plaintiffs argue that "to understand the issues related to the dismissal of State Farm from the litigation, it is important to review the seminal problem related to discovery that overshadowed the trial court's subsequent rulings." Plaintiffs argue that the trial court's ruling on certain discovery matters prevented them from fully responding to the motion for summary judgment, one of many reasons, they claim, that the trial court erred in entering summary judgment on the civil-conspiracy and malicious-prosecution counts.

¶ 12 Within the discovery matters alone, there are sub-issues. One is the trial court's recognition of the "joint legal defense privilege." Another is the trial court's refusal to require a privilege log for information it deemed covered by that privilege. Third, plaintiffs complain of a protective order entered in this case to protect confidential and sensitive information disclosed in discovery. Finally, plaintiffs claim that the trial court erred in sequencing discovery such that they were permitted to issue discovery requests only regarding the four named plaintiffs and not concerning other members of the purported class of subrogation defendants sued by State Farm and O'Dea during the relevant time period. We will take up these issues in turn.

¶ 13 II

¶ 14 We begin with the trial court's recognition of the "joint legal defense privilege" in Illinois. Our review is *de novo*. See *Center Partners, Ltd. v. Growth Head GP, LLC*, 2012 IL

113107, ¶ 65 (existence of privilege, or exception thereto, is question of law subject to *de novo* review).

¶ 15    Several years into this lawsuit, plaintiffs submitted this interrogatory to State Farm:

"Did State Farm ever notify, or advise, from January 1, 2006 *to the present*, either in writing or orally, [O'Dea] that there were any irregularities discovered in the handling of the State Farm subrogation matters? If so, state the date upon which the notification occurred, whether it was orally or in writing, the person from State Farm that issued the notification and the individual to whom the notification was addressed." (Emphasis added.)

¶ 16    Because the scope of that interrogatory included conversations between codefendants State Farm and O'Dea and their lawyers that occurred *after* the filing of this purported class-action lawsuit in October 2010, State Farm asserted (besides attorney-client and work-product privileges) a "joint defense privilege," arguing that anything that codefendants State Farm and O'Dea, as well as their respective lawyers, said to each other *after* the filing of the lawsuit, *about* the lawsuit, was privileged as part of communications concerning a common or joint defense. State Farm did acknowledge that postcomplaint conversations between State Farm and O'Dea responsive to this interrogatory had occurred: "Subject to these objections, and without waiving them, State Farm and O'Dea, with the involvement of counsel, have had privileged discussions relating to [p]laintiff's allegations during the pendency of this lawsuit."

¶ 17    The circuit court, after briefing and argument, recognized the "joint legal defense privilege" in Illinois. The court acknowledged that no Illinois reviewing court had recognized the privilege. But the court noted that the privilege had been recognized in federal court and other jurisdictions and reasoned that Illinois should recognize it, too, finding "nothing in Illinois case

law that would preclude its application in an Illinois cause of action." The trial court thus ruled that, to the extent that plaintiffs sought postcomplaint communications between State Farm and O'Dea in their interrogatory, that information was privileged from discovery.

¶ 18    On appeal, State Farm tells us that the "joint defense" doctrine has already been recognized in Illinois as the common-interest doctrine, pursuant to our supreme court's opinion in *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 193 (1991). Plaintiffs disagree; they argue that the *Waste Management* common-interest doctrine is different than the protection State Farm seeks. As we will explain below, plaintiffs are correct that the *Waste Management* common-interest doctrine is different than the remedy State Farm seeks. But State Farm is not altogether wrong, either, because the *Waste Management* common-interest doctrine is rooted in many of the same principles as the remedy State Farm seeks, whether we call it the "joint defense" doctrine or by another name.

¶ 19    We will begin by examining *Waste Management* common-interest doctrine as it currently exists in Illinois.


¶ 20                                    A

¶ 21    In *Waste Management*, our supreme court explained what it called the common-interest doctrine this way:

> "[U]nder the common interest doctrine, when an attorney acts for two different parties
> who each have a common interest, communications by either party to the attorney are not
> necessarily privileged in a subsequent controversy between the two parties. [Citations.]
> This is especially so where an insured and his insurer initially have a common interest in
> defending an action against the [insured], and there is a possibility that those

communications might play a role in a subsequent action between the insured and his insurer." *Id*. at 193.

¶ 22    At first blush, that seems simple enough. If one lawyer represents two parties who share a common interest in the outcome of a lawsuit (typically an insured and its insurer, who both want the insured to defeat a lawsuit brought by a plaintiff) and those parties are later embroiled in a controversy themselves (usually over whether the insurer has to cover the insured for the underlying judgment), either party may discover communications the other party made with that lawyer about that underlying lawsuit. *Id.*

¶ 23    That doctrine was expanded, however—by *Waste Management* itself—to include the situation where the insured retained counsel to defeat the underlying tort lawsuit but the lawyer did *not* represent the insurance company that was potentially liable to cover the insured's loss, nor did the insurance company even speak to the insured's lawyer. Despite the fact that the insurer did not retain or communicate with the insured's counsel, when the insured and insurer later became adverse in a declaratory-judgment action over coverage of the tort judgment, the insurance company was able to discover all communications between the insured and its counsel regarding the underlying tort lawsuit. *Id.* at 194.

¶ 24    The supreme court recognized that the common-interest doctrine was initially rooted in the so-called "dual-representation" doctrine, in which one lawyer represented two different parties simultaneously. See *id.* (noting that "[i]n the typical case *** the attorney has provided joint or simultaneous representation of the parties"); see also *Brunton v. Kruger*, 2015 IL 117663, ¶ 79 ("The common interest doctrine is rooted in the dual representation doctrine, which has a long history as an exception to the attorney-client privilege."). But in *Waste Management*, 144 Ill. 2d at 194, the supreme court made clear that the common-interest doctrine "may properly

be applied where the attorney, though neither retained by nor in direct communication with the insurer, acts for the mutual benefit of both the insured and insurer." In fact, the *Waste Management* common-interest doctrine has even been held to apply when each party with the common interest has its own lawyer and neither party communicates with the other party's lawyer. See *Western States Insurance Co. v. O'Hara*, 357 Ill. App. 3d 509, 512 (2005).

¶ 25 So in the *Waste Management* common-interest doctrine, the focus is on the "commonality of interests" between the two parties, not whether they retained the same lawyer. *Waste Management*, 144 Ill. 2d at 194. And while Illinois courts have never explicitly limited this doctrine to the insurer-insured relationship, that is the situation where it is most obviously applicable, as *Waste Management* itself noted. See *id.* at 193.

¶ 26 An insurer and an insured often have a complicated relationship; they have a common interest in defeating a lawsuit against the insured, but they might hold very different views on whether the insurer has to cover any resulting monetary judgment against the insured. *Id.* at 194. Thus, to the extent that an insurer and insured share a common interest in defeating the underlying lawsuit, either party may discover what the other communicated to its attorney about that underlying lawsuit, if the two parties later fight over insurance coverage. *Id.* But the parties may *not* discover what the other party discussed with its lawyers about insurance-coverage issues, because those are *not* interests they have in common; they are diametrically opposed on that issue. See *id.* at 200-01 (insurer may discover insured's attorney's work files relating to underlying tort litigation but may not discover any insured-attorney communications regarding insurance coverage); *Illinois Emcasco Insurance Co. v. Nationwide Mutual Insurance Co.*, 393 Ill. App. 3d 782, 790 (2009) (noting that *Waste Management* "preserves the attorney-client

privilege for communications between [insurer] and its attorneys regarding the coverage issues arising in this declaratory judgment action [over insurance coverage]").

¶ 27    State Farm says that the *Waste Management* common-interest doctrine supports its claim of a "joint defense privilege" here with its codefendant, O'Dea. To be sure, there are some similarities between that doctrine and what State Farm seeks. State Farm is saying that, after this purported class-action lawsuit was filed against State Farm and O'Dea, the two codefendants have, on various occasions, discussed a mutual defense of this lawsuit in joint conferences with their respective lawyers. State Farm says that the joint defense of this lawsuit is a matter of "common interest" between the codefendants and the law should respect those conversations as privileged.

¶ 28    But plaintiffs are correct that the remedy State Farm seeks, though obviously related to the *Waste Management* common-interest doctrine, in fact occurs under different circumstances and produces very different results. The *Waste Management* common-interest doctrine *defeats* a claim of privilege, when asserted by one party to the common interest against the other party to the common interest, when the two parties later become adverse. See *Brunton*, 2015 IL 117663, ¶ 83 ("the common-interest doctrine is not intended to *protect* a claim of attorney-client privilege" but, rather, "to *defeat* a claim of privilege when both parties to a lawsuit share a common interest in the communications made in confidence by one of the parties to its attorney" (emphases in original)).

¶ 29    State Farm does not want to defeat a claim of privilege but to *assert* one. To put a finer point on the matter, State Farm is trying to avoid the waiver of attorney-client or work-product privilege that would ordinarily result if, during its joint conferences with O'Dea and his lawyer, State Farm shared information or work product with its codefendant and codefendant's counsel.

See *Center Partners, Ltd.*, 2012 IL 113107, ¶ 35 (client waives attorney-client privilege if it discloses privileged information to third party); *Sherman v. Ryan*, 392 Ill. App. 3d 712, 736 (2009) (same for work-product privilege). Without the ability to assert some sort of exception, State Farm's privilege would be waived by disclosure of information to, or in the presence of, third parties—O'Dea and O'Dea's lawyer.

¶ 30 Viewed in this way, the remedy State Farm seeks—what it calls the "joint defense privilege"—is looking at the same situation as the common-interest doctrine but from a different viewpoint. The *Waste Management* common-interest doctrine looks at whether one party with the common interest may shield its communications from the other party with the common interest, in a later proceeding. The "joint defense privilege," using State Farm's vernacular, looks at whether the two parties to the common interest may shield their joint communications about that common interest from *third parties*—including their opponent in litigation.

¶ 31 So as related as the two doctrines may be, State Farm cannot simply latch onto the *Waste Management* common-interest doctrine for its relief. That doctrine is not applicable here.

¶ 32 The trial court found it inapplicable, too. But the court decided that, after a review of the doctrine and careful consideration, Illinois should recognize the "joint legal defense" doctrine in this case. Because State Farm spent much of its original brief arguing that its claim was supported by the *Waste Management* common-interest doctrine in Illinois and plaintiffs spent most of their briefs arguing that it was not, we ordered additional briefing on whether this court *should* recognize a "joint defense" doctrine, by whatever name we may call it, as a matter of first impression. We take up that question next.

¶ 33 B

¶ 34    As we noted, generally, a client waives an attorney-client privilege if it discloses privileged information to a third party. *Center Partners, Ltd.*, 2012 IL 113107, ¶ 35. The work-product privilege may be waived in much the same way. *Sherman*, 392 Ill. App. 3d at 736 (but finding no waiver of work-product privilege in that context). So without some protection in the law, when parties on the same side of a lawsuit meet together, clients and lawyers alike, to strategize over the prosecution or defense of the case, they risk waiving their attorney-client privilege for anything that is said in that meeting and likewise the work-product privilege for any work product shared.

¶ 35    The Restatement of the Law Governing Lawyers provides that, in this context, lawyers and parties on the same side of a lawsuit (or potential lawsuit) may converse together and may share work product, without waiving any privilege as to third parties, including the opposing party in the lawsuit. Specifically, section 76, paragraph 1, of the Restatement (Third) of the Law Governing Lawyers, lays out this doctrine:

> "(1) If two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged under [the attorney-client privilege] that relates to the matter is privileged as against third persons. Any such client may invoke the privilege, unless it has been waived by the client who made the communication." Restatement (Third) of the Law Governing Lawyers § 76 (2000) (Restatement § 76(1)).

¶ 36    State Farm cites this Restatement section as the embodiment of what it seeks here. State Farm and O'Dea entered into a "joint defense agreement," whereby they would confidentially

share information concerning their joint defense of this class-action lawsuit. Because State Farm and O'Dea are "clients with a common interest in a litigated *** matter" and are "represented by separate attorneys," and "they agree[d] to exchange information concerning the matter" with one another, State Farm argues that any communications between the codefendants are "privileged as against third persons," including plaintiffs. See *id.*

¶ 37    The protection State Farm seeks was first recognized in 1871 by the Virginia Supreme Court, in the context of criminal litigation, and became known as the "common-defense" or "joint defense" rule. See *Chahoon v. Commonwealth*, 62 Va. 822, 841-42 (1871) ("They had a right, all the accused and their counsel, to consult together about the case and the defence, and it follows as a necessary consequence, that all the information, derived by any of the counsel from such consultation, is privileged ***.").

¶ 38    The doctrine was recognized through the first half of the 1900s by a few courts, in different contexts, including civil cases, and involving work product as well as attorney-client communications. See, *e.g.*, *Schmitt v. Emery*, 2 N.W.2d 413, 417 (Minn. 1942), *overruled on other grounds by Leer v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 308 N.W.2d 305 (Minn. 1981) (civil case protecting shared work product); *State v. Emmanuel*, 259 P.2d 845, 854 (Wash. 1953) (*en banc*) (recognizing and applying doctrine where "[t]he persons present at this conference had a mutual interest in defending against the allegations of [the] complaint"); see also Note, *Waiver of Attorney-Client Privilege on Inter-Attorney Exchange of Information*, 63 Yale L.J. 1030, 1032 (1954) (as of 1954, "[t]he few cases relevant to the more complicated question of the attorney-client privilege indicate that persons conducting a 'joint defense' may pool information without waiving this privilege").

¶ 39    Since that time, "courts have extended" this doctrine "[b]ecause 'the need to protect free flow of information from client to attorney logically exists whenever multiple clients share a common interest about a legal matter.' " *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990) (quoting *United States v. Schwimmer,* 892 F.2d 237, 243-44 (2d Cir. 1989)). Thus, this doctrine has been extended to:

    * civil codefendants (see *Western Fuels Ass'n, Inc. v. Burlington Northern R.R. Co.*, 102 F.R.D. 201 (D. Wyo. 1984));

    * companies and employees that had been individually summoned before a grand jury who shared information before any indictment was returned (see *Continental Oil Co. v. United States*, 330 F.2d 347 (9th Cir. 1964));

    * potential coparties to prospective litigation (see *In re LTV Securities Litigation*, 89 F.R.D. 595 (N.D. Tex. 1981));

    * coplaintiffs in a civil action (see *In re Grand Jury Subpoenas*, 902 F.2d at 249; *United States ex rel. Pogue v. Diabetes Treatment Centers of America*, No. Civ. 99-3298, 2004 WL 2009413, at *4 (D.D.C. May 17, 2004));

    * governmental coplaintiffs in multi-state litigation (see *Tobaccoville USA, Inc. v. McMaster*, 692 S.E.2d 526, 531 (S.C. 2010));

    * plaintiffs who were pursuing separate actions in different states (see *Schachar v. American Academy of Ophthalmology, Inc.*, 106 F.R.D. 187 (N.D. Ill. 1985)); and

    * civil defendants who were sued in separate actions (see *Transmirra Products Corp. v. Monsanto Chemical Co.*, 26 F.R.D. 572 (S.D.N.Y. 1960)).

Because of this expansion, courts have recognized this doctrine under many different names, sometimes even referring to it as an independent privilege. See George S. Mahaffey, Jr., *Taking*

*Aim at the Hydra: Why the "Allied-Party Doctrine" Should Not Apply in* Qui Tam *Cases When the Government Declines to Intervene*, 23 Rev. Litig. 629, 630-32 (2004).[1]

¶ 40    We are more inclined toward the modern trend of referring to the doctrine not as a privilege in and of itself—the privilege is either the attorney-client or work-product privilege—but as an exception to the rule of waiver that would ordinarily be triggered when attorneys and clients communicate in the presence of, or share information with, third parties; this exception is based on the parties' common interest in defeating a litigation adversary. See, *e.g.*, *O'Boyle v. Borough of Longport*, 94 A.3d 299, 317 (N.J. 2014) (adopting "the common interest rule" as "exception to waiver of confidential attorney-client communications or work product"); *Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*, 57 N.E.3d 30, 39 (N.Y. 2016) (explaining that "common-interest exception" or "common-interest doctrine" is "not an evidentiary privilege or an independent basis for the attorney-client privilege" but, instead, "limits the circumstances under which attorneys and clients can disseminate their communications to third parties without *waiving* the privilege (emphasis in original)"); *Tobaccoville USA*, 692 S.E.2d at 531 ("common-interest doctrine" is "not a privilege in itself, but is instead an exception to the waiver of an existing privilege"); *Arizona Independent Redistricting Comm'n v. Fields*, 75 P.3d 1088, 1100 (Ariz. Ct. App. 2003) ("The doctrine does not create a privilege, but is an exception to the rule that communications between a person and a lawyer representing another person are not privileged.").

---

[1]A partial list of names include "the joint-defense doctrine, joint-defense privilege, joint-prosecutorial privilege, allied-lawyer privilege, common-interest doctrine, common-interest exception, common-interest privilege, common-interest rule, common-defense doctrine, pooled-information privilege, common-purpose theory, community-of-interest doctrine, joint-client privilege, joint-client doctrine, common-interest exception to waiver, and shared-confidentiality privilege." *Id*.

¶ 41    Among many other federal courts, federal courts sitting in Illinois have recognized this common-interest exception to the waiver rule, though not by that name. For example, in *United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979), the court held that a party was entitled to the protection of the attorney-client privilege when his statements were made in confidence to an attorney for a codefendant for a common purpose related to both defenses. The Seventh Circuit held that "[t]he privilege protects pooling of information for any defense purpose common to the participating defendants." *Id.* at 1337. See also *Schachar*, 106 F.R.D. at 191 ("It is now well established that attorneys facing a common litigation opponent may exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege.").

¶ 42    Aside from federal court, many states have recognized that parties with a common interest in defeating a litigation opponent (or potential opponent) may share privileged information without waiving the privilege as to third parties. For example, just three years ago, the New Jersey Supreme Court, as a matter of first impression, "expressly adopt[ed] the common interest rule." *O'Boyle*, 94 A.3d at 317. Other state supreme courts, in the last ten years, have adopted the doctrine, including South Carolina, Pennsylvania, Texas, and Massachusetts. See *Tobaccoville USA*, 692 S.E.2d at 531; *Karoly v. Mancuso*, 65 A.3d 301, 315 (Pa. 2013); *In re XL Specialty Insurance Co.*, 373 S.W.3d 46, 51 (Tex. 2012); *Hanover Insurance Co. v. Rapo & Jepsen Insurance Services, Inc.*, 870 N.E.2d 1105, 1111-12 (Mass. 2007).

¶ 43    New York has recognized the common-interest exception to the waiver rule since 1989 and since then has applied it "in criminal as well as civil matters, to communications of both coplaintiffs and codefendants." *Ambac Assurance Corp.*, 57 N.E.3d at 37. The Tennessee Supreme Court recognized it in 1950, though finding it inapplicable in that instance; in modern

times, the lower courts have reiterated its viability in Tennessee. See *Vance v. State*, 230 S.W.2d 987, 990-91 (Tenn. 1950); *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 214 (Tenn. Ct. App. 2002).

¶ 44    State appellate courts have recognized it, including courts in Maryland, Arizona, Indiana, and Florida. See *Gallagher v. Office of the Attorney General*, 787 A.2d 777, 784-85 (Md. Ct. Spec. App. 2001) (recognizing it is "uniformly held that under the common interest rule, parties with shared interests in actual or pending litigation against a common adversary may share privileged information without waiving their right to assert the privilege"); *Fields*, 75 P.3d at 1100; *Price v. Charles Brown Charitable Remainder Unitrust Trust*, 27 N.E.3d 1168, 1173 (Ind. Ct. App. 2015); *Visual Scene, Inc. v. Pilkington Bros., plc.*, 508 So. 2d 437, 443 (Fla. Ct. App. 1987).

¶ 45    Equally interesting is that we are aware of no jurisdiction that has *rejected* the principle when called upon to recognize it. Many states apparently have not addressed the question in a published decision—as in Illinois—probably owing to the fact that discovery issues infrequently make their way to an appellate court. But as far as our research discloses, every court that *has* addressed it has recognized it in some form. To be sure, courts have disagreed on the scope of this common-interest exception: whether the parties must be perfectly aligned or just generally share a common litigation goal, whether it applies beyond current litigation to anticipated litigation, whether it applies beyond litigation to commercial interests generally, which communications are protected, and the like. See generally *O'Boyle*, 94 A.3d at 317 (noting various disagreements over scope of common-interest exception on which courts around country have disagreed).

¶ 46    But as far as our research and that of the parties discloses, *none* of those courts has refused to recognize the common-interest exception to the waiver rule. None of them has held that parties with a common interest to defeat an adversary in a case or potential case should *not* be allowed to pool information and communicate with each other without fear of waiving a privilege.

¶ 47    We also find it worthy of note that, when the United States Supreme Court was recommending language to Congress for the Federal Rules of Evidence in 1972, it listed nine specific privileges for inclusion, including the attorney-client privilege and including this common-interest exception to waiver within that privilege. In proposed Rule 503(b)(3), the Supreme Court recommended this language for statutory codification:

>    "(b) General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, *** (3) *by him or his lawyer to a lawyer representing another in a matter of common interest*." (Emphasis added.) Order, Amendments to the Federal Rules of Evidence, 56 F.R.D. 183, 236 (Dec. 18, 1972) (Proposed FRE 503(b)(3)).

¶ 48    Ultimately, "Congress rejected this recommendation in favor of [Federal Rule of Evidence] 501's general mandate." *Jaffee v. Redmond*, 518 U.S. 1, 8 n.7 (1996); see also *Trammel v. United States*, 445 U.S. 40, 47 (1980); Fed. R. Evid. 501, Advisory Committee Notes to 1974 Enactment (noting that "the House amended article V to eliminate all of the Court's specific rules on privileges"). So while we glean little precedential value *per se* from this history, it is at least worth mentioning that the United States Supreme Court was prepared to see the common-interest exception to the waiver rule codified in federal statute.

¶ 49    The Uniform Law Commission of the National Conference of Commissioners on Uniform State Laws drafted Uniform Rules of Evidence, including section 502(b)(3), which protects attorney-client communications "by the client or a representative of the client or the client's lawyer or a representative of the lawyer *to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein.*" (Emphasis added.) Unif. R. Evid. 502(b)(3) (Unif. Law Comm'n 2005). Several states have enacted this provision into law in identical or similar form. See, *e.g.*, Ark. R. Evid. 502(b)(3); Del. R. Evid. 502(b)(3); Haw. Rev. Stat. § 626-1, R. 503(b)(3); Ky. R. Evid. 503(b)(3); Me. R. Evid. 502(b)(3); Miss. R. Evid. 502(b)(3); N.H. R. Evid. 502(b)(3); N.D. R. Evid. 502(b)(3); 12 Okla. Stat. § 2502(B)(3); S.D. Codified Laws § 19-19-502(b)(3); Tex. R. Evid. 503(b)(1)(C); Vt. R. Evid. 502(b)(3). See *Ambac Assurance Corp.*, 57 N.E.3d at 37 (discussing current legislation on common-interest exception).

¶ 50    With all of this in mind, we must determine whether Illinois should recognize the common-interest exception to the waiver rule in Illinois. We find many reasons that it should.

¶ 51    First, the common-interest exception to waiver "offers all parties to the exchange the real possibility for better representation by making more information available to craft a position and inform decision-making in anticipation of or in the course of litigation." *O'Boyle*, 94 A.3d at 316. "Uninhibited communication among joint parties and their counsel about matters of common concern is often important to the protection of their interests." *McPartlin*, 595 F.2d at 1336. Without such protection between two parties sharing a common interest, "the threat of mandatory disclosure may chill the parties' exchange of privileged information and therefore thwart any desire to coordinate legal strategy." *Ambac Assurance Corp.*, 57 N.E.3d at 38. Protecting these communications thus "promotes candor that may otherwise have been inhibited"

(*id.*) and allows attorneys "to fully and completely prepare for trial by assuring that their legal preparations will not be accessible to an adversary." *Pogue*, 2004 WL 2009413, at *4.

¶ 52     Second, "[c]ooperation between defendants in such circumstances is often not only in their own best interests but serves to expedite the trial or *** the trial preparation." *McPartlin*, 595 F.2d at 1337. Co-counsel in multiple-party cases often pool their resources at trial; one lawyer may cross-examine one of the opponent's witnesses, while the other will focus on a different witness; one may handle the opening statement, while another focuses on the summation. Entire portions of the defense or prosecution of a case may be divided up among the parties. That division of work not only helps the multiple parties on the same side of the case; it promotes efficiency at trial, preventing what could be a fair amount of redundancy in questioning and argument. The discovery process is likewise better served when parties are allowed to pool resources, avoiding unnecessary repetition.

¶ 53     Third, the attorney-client privilege in Illinois already protects statements made by the client to necessary agents of the attorney or client, including certain nontestifying experts and investigators who assist in the preparation of the case. See, *e.g.*, *People v. Knuckles*, 165 Ill. 2d 125, 135 (1995) (conversations between client and nontestifying mental health consultant privileged from disclosure); *People v. Knippenberg*, 66 Ill. 2d 276, 284 (1977) (defendant's communications with defense investigator privileged from disclosure). The privilege so extends because of lawyers' need "to fully investigate their clients' cases" (*Knuckles*, 165 Ill. 2d at 132) and to "investigate fully and without delay" (internal quotation marks omitted) (*Knippenberg*, 66 Ill. 2d at 284). It feels like a logical extension to treat confidential communications between a client and his coparty's attorney the same way, given that the stated reason for the common-interest exception to waiver is essentially the same as the attorney-client privilege, to " 'protect

the free flow of information from client to attorney.' " *In re Grand Jury Subpoenas*, 902 F.2d at 249 (quoting *Schwimmer*, 892 F.2d at 243-44). See *Hanover*, 870 N.E.2d at 1111 (likewise noting that common-interest exception to waiver is consistent with extension of attorney-client privilege to statements made to agents of attorney, including consultants).

¶ 54    Another factor to consider, at least anecdotally, is that at least some practitioners in Illinois state court and some judges seem to be under the impression that "common-interest agreements" and "joint defense agreements" are *already* recognized and enforceable under Illinois law. See, *e.g.*, *BorgWarner, Inc. v. Kuhlman Electric Corp.*, 2014 IL App (1st) 131824, ¶ 6 (parties "entered into a 'Joint Defense and Confidentiality Agreement' *** to outline the parties' common interest relating to the underlying" claims); *Brandon Apparel Group v. Kirkland & Ellis*, 382 Ill. App. 3d 273, 279 (2008) (trial court had found documents at issue were protected subject to "common interest doctrine" because documents were prepared in order to further parties' "joint litigation strategy").

¶ 55    Indeed, federal district courts in Illinois, sitting in diversity jurisdiction on Illinois state-law claims and thus applying Illinois law on questions of privilege, have written that Illinois recognizes the same common-interest exception as federal courts. See *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 326 (N.D. Ill. 2008) ("The legal principles governing application of the common interest doctrine appear to be the same under Illinois and [f]ederal law."). That conclusion, as we have tried to explain above, is simply incorrect. The district court in *Grochocinski* cited no Illinois case law for that proposition and exclusively relied on a federal magistrate's decision in *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 273 (N.D. Ill. 2004).

¶ 56    *Dexia*, in turn, cited only federal cases, too, with the exception that it cited our supreme court's decision in *Waste Management* for the proposition that " '[i]t is the commonality of

interests which creates the exception, not the conduct of the litigation.' " *Id.* at 273 (quoting *Waste Management*, 144 Ill. 2d at 194). While that statement in *Waste Management* is no doubt true, *Waste Management* was not talking about the same "common-interest doctrine" that *Dexia* was. *Dexia* was discussing the doctrine we have been most recently analyzing, the common-interest exception to the waiver rule. See *id.* at 274-75 (finding that parties "share[d] a common interest in pursuing a common legal goal" and "[a]ccordingly, we find that [coplaintiffs] fall within the common interest doctrine, such that [one party] does not waive the attorney-client privilege by sharing with [other party] documents that fall within that common interest").

¶ 57    But however incorrect those federal decisions may be, the fact remains that the prevailing view in federal courts sitting in Illinois seems to be that Illinois has already adopted a common-interest exception to the waiver doctrine.

¶ 58    Secondary legal sources seem to think so, too. Any practitioner in Illinois, looking for tips on "Illinois civil trial evidence" from the Illinois Institute for Continuing Legal Education (IICLE), may read about the " 'common-interest rule' or 'joint-defense doctrine' or sometimes the 'common-defense rule,' " though the IICLE cites only federal decisions for support. Michael J. Baron, et al., *Common-Interest Doctrine*, in Illinois Civil Trial Evidence § 7.8, at 7-16 (Ill. Inst. For Cont. Legal Educ. 2012 Supp.). So, too, does the Illinois Practice series, on the topic of "Civil Discovery," also citing exclusively federal case law. See 10 Jeffrey S. Kinsler & Jay E. Grenig, Illinois Practice, Civil Discovery § 1.14 (2d ed. 2017 Supp.). Likewise, Westlaw's "Practical Law Litigation" series online, specific to Illinois, provides a model "joint defense agreement" on this topic. See Joint Defense and Confidentiality Agreement (IL), Thomson Reuters Practical Law Standard Document, 2014 WL 2749134.

¶ 59    We are not bound by what practitioners think or what secondary legal authorities say. Nor are we required to follow a federal court's interpretation of Illinois law. But as we grapple with whether to recognize a common-interest exception to the waiver rule, it is helpful to know that many practitioners and authorities in Illinois seem to think it already *has* been recognized. See *Hanover Insurance Co.*, 870 N.E.2d at 1111-12 (in adopting common-interest exception to waiver, noting that litigants in Massachusetts "have relied on [the] implicit existence" of doctrine).

¶ 60    Against all of this, we must consider the reasons not to recognize this doctrine in Illinois. The most obvious reason is that disclosure of information in Illinois is the rule and privileges the exception; thus, privileges should be narrowly construed. *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 89 Ill. 2d 103, 118 (1982). No doubt, the attorney-client privilege, itself, is in derogation of our legal system's traditional search for the truth. *Id.*; *Adler v. Greenfield*, 2013 IL App (1st) 121066, ¶ 41 (because attorney-client privilege "poses a bar to the discovery of relevant and material facts, it is an exception to the general duty to disclose and is interpreted narrowly"). Likewise, any extension of that privilege would only further inhibit the truth-seeking function of our system.

¶ 61    To that point, Professor Graham complains that, while the common-interest exception to the waiver rule "is efficient because it increases the flow of information between co-litigants," the flip side is that "it also reduces the flow of information to the court and no one has ever made a convincing argument that strategy sessions among codefendants produce a benefit to the legal system that outweighs the cost of the loss of evidence to the courts." 24 Charles Alan Wright & Kenneth W. Graham, Federal Practice & Procedure Evidence § 5493, at 461-62(1986) ("Privileged Communications—Allied Lawyer").

¶ 62    In the end, taking everything we have detailed above into account, the overwhelming weight of authority and reason leads us to conclude that Illinois should likewise recognize the common-interest exception to the waiver rule.

¶ 63    Principal among the reasons for recognizing the common-interest exception to the waiver rule is that, as we mentioned earlier, we find it to be a logical extension of the *Waste Management* common-interest doctrine, which already recognizes the unique relationship between two separate parties that share a common interest in the outcome of a matter, whether they have the same lawyer or separate counsel and regardless of whether they have actually shared information. See *Waste Management*, 144 Ill. 2d at 194; *Western States Insurance Co.*, 357 Ill. App. 3d at 517. Although it is ultimately used to defeat a claim of privilege, the *Waste Management* common-interest doctrine is in fact an *expansive* view of the attorney-client privilege—one that includes both parties with the common interest, and each of their lawyers, within the privilege's umbrella, which is why one of the coparties cannot assert the privilege against the other.

¶ 64    In that respect, the common-interest exception to the waiver rule is no different. It stems from that same relationship of common interest, and it likewise expands the protection of the attorney-client privilege to cover both parties sharing the common interest and their lawyers. The only differences are that with the common-interest exception to waiver, each party will always have separate counsel and, most significantly, the fight over disclosure is not between the coparties but with a *third party*—usually the opposing party in the case or controversy—wishing to intrude on those coparty conversations with counsel. It would make little sense to view the privilege expansively in the *Waste Management* scenario, when the coparties are trying to discover each other's conversations, but restrictively when those coparties are trying to shield

their joint communications from a third party. Simply put, if Illinois already recognizes a broad umbrella of privilege between parties while they share a common interest in the outcome of a lawsuit, there is no reason not to enforce that privilege *as against third parties* just as broadly.

¶ 65    As we previously noted, we also find the common-interest exception to the waiver rule to be a logical extension of our supreme court decisions extending the attorney-client privilege to include client communications with nontestifying mental-health experts (*Knuckles*, 165 Ill. 2d at 135) and investigators (*Knippenberg*, 66 Ill. 2d at 284). If the basis for protecting those communications is to allow a full and thorough preparation of the case (*id.*; *Knuckles*, 165 Ill. 2d at 132), that same reasoning would apply to allowing a client to speak in the presence of a coparty and its lawyer for the express purpose of pooling information for the better of the case.

¶ 66    The decisions we have discussed above provide additional reasons why the common-interest exception to the waiver rule should be recognized, and not a single court, when facing the question, has refused to recognize it. Several other states recognize it by statute. The United States Supreme Court recommended it for inclusion in the Federal Rules of Evidence. And for what it's worth, a lot of practitioners and judges will be surprised to learn that it has not already been recognized in Illinois.

¶ 67    We disagree with Professor Graham's criticism that the need to allow coparties to strategize is not worth the price of withholding evidence from the justice system. We do not see how any more evidence would be exempt from disclosure than that which is *already* exempt from disclosure under the attorney-client and work-product privileges.

¶ 68    Consider, for example, the underlying case before us. State Farm and O'Dea are accused of conspiring to engage in tortious conduct toward plaintiffs. Hypothetically, if State Farm admitted to certain tortious conduct to its lawyers, that *communication* would be exempt from

disclosure as an attorney-client privilege. But the tortious conduct, itself, would certainly be discoverable through the traditional process of interrogatories, document requests, requests to admit, subpoenas, and depositions. See *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney ***."); *Kunz v. South Suburban Hospital*, 326 Ill. App. 3d 951, 958 (2001) ("Communications are privileged; facts are not."). Likewise, if State Farm and O'Dea engaged in some act or some exchanges of words indicative of a tort or conspiracy, those acts and those exchanges would unquestionably be discoverable— but State Farm's *discussion* of them to its counsel, and O'Dea's discussion of them to *his* counsel, would be exempted by the attorney-client privilege.

¶ 69     The only thing the common-interest exception to the waiver rule adds to this construct is that the lawyers and clients are together, communicating jointly. They are communicating on the same topics—the underlying facts of the case, their strategic significance, a plan of attack going forward—but the underlying facts, themselves, will remain just as discoverable as they always were. So the fear that a broad new category of information will be withheld if we recognize the common-interest exception to waiver is, in our view, overblown.

¶ 70     Simply put, any reason not to recognize the common-interest exception to the waiver rule is a reason not to recognize the attorney-client privilege in the first place. Likewise, any reason to recognize an attorney-client privilege, as we obviously do, is a reason to recognize the common-interest exception to the waiver rule, too. See, *e.g.*, *Hanover Insurance Co.*, 870 N.E.2d at 1110 (adopting common-interest exception to waiver; acknowledging limitation on truth-seeking function but reasoning that "the social good derived from the proper performance of the functions of lawyers acting for their clients … outweigh[s] the harm that may come from the

suppression of the evidence" (internal quotation marks omitted)); *O'Boyle*, 94 A.3d at 317 (recognizing "intru[sion] on the fact-finding function of litigation" but recognizing common-interest exception as logical extension of attorney-client privilege).

¶ 71    For all of these reasons, the trial court properly recognized the common-interest exception to the waiver rule in Illinois.

¶ 72                                    C

¶ 73    Recognizing the existence of the common-interest exception to the waiver rule is one thing. Outlining its scope is another. At the margins, this doctrine has been the source of considerable debate and controversy. Courts have considered such questions as whether the common-interest exception extends beyond actual cases to *potential* litigation, whether the doctrine extends beyond litigation interests to other interests, and whether a *written* common-interest agreement is required or the extent to which the parties must establish some form of advance agreement to confidentially share information.[2]

¶ 74    While the Restatement provision answers many of these questions, we will leave it to our supreme court whether to adopt that Restatement; being in uncharted terrain, we will confine our analysis to the facts before us and the questions we must necessarily resolve. We need not decide whether this doctrine extends beyond actual litigation to the threat of litigation, or whether a written or advance agreement is required, because in this case, an actual lawsuit was filed, and

---

[2]A small sample of these decisions includes *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 n.7 (7th Cir. 2007) (whether to extend to potential litigation); *Ambac Assurance Corp.*, 57 N.E.3d at 631 (whether to extend rule beyond litigation interests); *Schaeffler v. United States*, 806 F.3d 34, 41 (2d Cir. 2015) (same); *Boyd*, 88 S.W.3d at 217 (whether written agreement required); *Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002) (need for written or advance agreement).

State Farm is asserting the common-interest exception to the waiver rule only to post-lawsuit statements between State Farm, O'Dea, and their lawyers after they executed a written confidentiality agreement. Nor do we need to decide whether the doctrine extends beyond litigation to other common interests, as here, the interests are obviously related to litigation.

¶ 75    But two points require resolution. The first is the extent to which the coparties must share a common interest—need they be aligned in all respects? The second question we must determine is which statements, precisely, are covered by the common-interest exception to the waiver rule. We will take these questions in that order.

¶ 76                                                                    1

¶ 77    The first question, a matter of dispute between State Farm and plaintiffs here, is whether the parties sharing a "common interest" must be perfectly aligned in all respects or whether it suffices that they share some common interest in defeating a litigation opponent.

¶ 78    Our earlier discussion of the *Waste Management* common-interest doctrine easily answers that question. That doctrine, almost always occurring in the context of the complicated insurer-insured relationship, necessarily—indeed, *by definition*—involves situations where the parties share a common interest on one topic (the defense of an underlying suit against the insured) but harbor materially different views on another (whether the insurer will be required to cover any judgment award against an insured)—so different, in fact, that the disagreement results "in a subsequent controversy" between the insurer and insured. *Waste Management*, 144 Ill. 2d at 193.

¶ 79    Our courts have made it clear that the *Waste Management* common-interest doctrine starts and ends with communications concerning that common interest, and any communications

about insurance coverage—or any other matters where the interests diverge—are not included within the scope of that doctrine. See *id.* at 200-01 (common-interest doctrine covered communications between insured and lawyer regarding underlying tort action but not communications involving insurance coverage); *Illinois Emcasco Insurance Co.*, 393 Ill. App. 3d at 790 (insurer's communications with counsel regarding insurance coverage not discoverable by insured in lawsuit over coverage, as those communications were not part of insured's and insurer's common interest in defending underlying lawsuit against insured). From these cases, there is no doubt that the parties must share a common interest in the litigation but need not be fully aligned on every issue.

¶ 80 As for case law specifically regarding the common-interest exception to the waiver rule, the result is the same. The Seventh Circuit held that coparties' positions need not be "in all respects compatible." *McPartlin*, 595 F.2d at 1336 (finding that "[t]he cases do not establish such a limitation, and there is no reason to impose it"). Thus, in *McPartlin*, though the parties' defenses were in some senses incompatible, they shared a common interest in discrediting a particular witness, and their joint communications to that common end were protected from disclosure. *Id.* See also *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 967 (N.D. Ill. 2010) ("[T]he possibility of future discord between the parties is analytically irrelevant to the current alignment of their interests. It is enough that the parties presently share a common interest.").

¶ 81 *McPartlin* seems to reflect the overwhelmingly accepted approach. See, *e.g.*, *Eisenberg v. Gagnon*, 766 F.2d 770, 787-88 (3d Cir. 1985) ("Communications to an attorney to establish a common defense strategy are privileged even though the attorney represents another client with some adverse interest."); *United States v. Bay State Ambulance & Hospital Rental Service, Inc.*, 874 F.2d 20, 28 (1st Cir.1989) (quoting *Eisenberg* for same proposition); *In re Grand Jury*

*Subpoena Duces Tecum Dated November 16, 1974*, 406 F. Supp. 381, 392 (S.D.N.Y. 1975) (fact that corporation and individual corporate officers might one day become adverse, as corporation might have claims against officers for SEC violations, did not change fact that their interests were currently aligned in immediate SEC action: "That a joint defense may be made by somewhat unsteady bedfellows does not in itself negate the existence or viability of the joint defense."); *Static Control Components, Inc. v. Lexmark International, Inc.*, 250 F.R.D. 575, 579 (D. Colo. 2007) (some adversity among parties does not defeat common-interest doctrine).

¶ 82 Notably, when the Supreme Court proposed the codification of the common-interest exception (though rejected by Congress in favor of no codified privilege), committee comments suggested the rule applied when clients had "*[s]ome* interests in common" and not when "there is [n]o common interest to be promoted by a joint consultation." (Emphasis added and internal quotation marks omitted.) *McPartlin*, 595 F.2d at 1336. That language likewise suggests that parties' interests need not be aligned in all respects.

¶ 83 For all of these reasons, we agree that it would be unreasonable to require perfect alignment of the parties' interests. What is critical, as *McPartlin* noted, and consistent with *Waste Management*, is that the communications between the parties sharing the common interest be in furtherance of that common interest—that they be germane to that common interest. See *Waste Management*, 144 Ill. 2d at 200-01; *McPartlin*, 595 F.2d at 1336. As long as the communications further the common interest between the parties, it is of no import that the parties' positions might be otherwise misaligned. See, *e.g.*, *BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, 614 Fed. App'x. 690, 702 (5th Cir. 2015) (particular communication did not further common interest but was diametrically opposed to it); *In re Santa Fe International Corp.*, 272 F.3d 705, 711-12 (5th Cir. 2001) (communications protected only if

they further joint or common interest); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579 (N.D. Cal. 2007) (doctrine only applies to communications designed to further common interest); *Blockbuster Entertainment Corp. v. McComb Video, Inc.*, 145 F.R.D. 402, 404 (M.D. La. 1992) (no "joint defense doctrine" protection where attorneys did not communicate about joint effort to defend case); *Fields*, 75 P.3d at 1100 (privilege covers only communications that facilitate rendition of professional services to both clients).

¶ 84    Here, State Farm's and O'Dea's interests are sufficiently aligned to satisfy the standard. Many of the theories of liability against State Farm are vicarious in nature; the actual acts of alleged wrongdoing were by O'Dea, allegedly with State Farm's blessing or later ratification. If plaintiff's case against O'Dea failed for whatever reason, likewise its case against State Farm would fail. State Farm and O'Dea have every reason to assist one another in defeating this purported class-action lawsuit.

¶ 85    It is true that we could conjure up a scenario where the codefendants' interests could diverge. Instead of joining O'Dea's defense in all respects, State Farm could point the blame at O'Dea for the allegedly tortious behavior but argue that State Farm neither knew nor should have known of that conduct. And as plaintiffs note, because O'Dea was State Farm's lawyer in the subrogation claims and plaintiffs claim that O'Dea charged sheriff fees that were never incurred, it is even possible that State Farm might one day have a contract or malpractice claim against O'Dea.

¶ 86    But "the possibility of future discord between the parties" (*Pampered Chef*, 737 F. Supp. 2d at 967) is often present. Though State Farm and O'Dea may be "unsteady bedfellows" (*Grand Jury Subpoena*, 406 F. Supp. at 392) who conceivably might one day be adverse to one another, there is nothing particularly unique about that posture. There is always the possibility that one

coparty could turn on another in litigation, finding more strategic advantage in blaming that coparty to deflect blame from itself. If that hypothetical possibility were enough, there would be nothing left of the common-interest exception to the waiver doctrine. There is no question that State Farm and O'Dea would mutually benefit from the defeat of plaintiffs' claims, and the possibility they might one day assume adverse positions against one another does not alter that fact. We find that State Farm and O'Dea shared a common interest in the outcome of this purported class-action lawsuit.

¶ 87                                        2

¶ 88    Now that we have held that the common-interest exception to the waiver rule could at least theoretically apply in this case, we must determine which communications, exactly, are protected by the common-interest exception to the waiver rule.

¶ 89    The interrogatory in this case asked whether State Farm ever notified O'Dea of any irregularities in the handling of the subrogation matters. To the extent that any such communications took place after the filing of this class-action lawsuit, State Farm asserted the attorney-client, work-product, and "joint defense" privileges and then wrote: "State Farm and O'Dea, *with the involvement of counsel*, have had privileged discussions relating to [p]laintiff's allegations during the pendency of this lawsuit." (Emphasis added.) State Farm has also stated that no documents were responsive to this interrogatory, only oral conversations. So we must decide which conversations "involving" parties and their attorneys are covered by the common-interest exception to the waiver rule.

¶ 90    The Restatement provides that "a communication of any such client that otherwise qualifies as privileged under [the attorney-client privilege] that relates to the matter is privileged

as against third persons." Restatement § 76(1). The Supreme Court's proposed federal rule of evidence (though never codified) provides that a client may assert the attorney-client privilege for communications made "by him or his lawyer to a lawyer representing another in a matter of common interest." Proposed FRE 503(b)(3), 56 F.R.D. at 236. The Uniform Rule, in a broad mouthful, protects communications "by the client or a representative of the client or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein." (Emphasis added.) Unif. R. Evid. 502(b)(3) (Unif. Law Comm'n 2005).

¶ 91 There seems to be universal agreement, then, that the common-interest exception to the waiver rule covers lawyer-to-lawyer exchanges—that is, to a communication by Party *A*'s lawyer to Party *B*'s lawyer that discloses confidential communications between Party *A* and its lawyer. What Party *A* told its lawyer would normally, and obviously, be protected by the attorney-client privilege. Party *A*'s lawyer's disclosure of that information to Party *B*'s lawyer, with Party *A*'s consent (as part of the common-interest agreement to share confidential information), would normally be a waiver of its attorney-client privilege, but the common-interest exception would prevent the waiver from occurring. We are aware of no case law that would *not* include attorney-attorney communications within the scope of this doctrine; it seems to be the most obvious application of the doctrine. See, *e.g.*, *O'Boyle*, 94 A.3d at 317 (common-interest exception "applies to *communications between attorneys* for different parties" (emphasis added)). Even the strictest views of the rule include lawyer-to-lawyer communications within the scope. See *In re Teleglobe Communications Corp.*, 493 F.3d 345, 364 (3d Cir. 2007) (limiting common-interest exception to situations where both parties are represented by different attorneys and the communications are between those attorneys).

¶ 92    The prevailing view also seems to be that the common-interest exception to waiver protects communications directly from Party *A* to Party *B*'s lawyer, provided it is done in furtherance of the common-interest agreement. See, *e.g.*, *McPartlin*, 595 F.2d at 1335-36; *Fields*, 75 P.3d at 1100 (doctrine covers "communications between a person and a lawyer representing another person"). The Supreme Court's proposed rule specifically said so, as does the uniform rule. See Proposed FRE 503(b)(3), 56 F.R.D. at 236 (allowing client to assert privilege over communications made "*by him* or his lawyer to a lawyer representing another in a matter of common interest" (emphasis added)); Unif. R. Evid. 502(b)(3) (Unif. Law Comm'n 2005) (protecting communications, among others, "by the client *** to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein").

¶ 93    We should pause here and note that this conclusion—that Party *A*'s statements to Party *B*'s lawyer are protected—seems to run against our earlier statement that the common-interest exception to the waiver rule is not intended to create new privileges but to avoid the waiver of existing ones. See, *e.g.*, *Tobaccoville USA*, 692 S.E.2d at 531 ("The common interest doctrine is not a privilege in itself, but is instead an exception to the waiver of an existing privilege"); Restatement § 76(1) (communication must "otherwise qualif[y] as privileged"). The attorney-client privilege has never been held to protect a communication between a party and *someone else's* lawyer. Viewed in this way, then, protecting statements from Party *A* to Party *B*'s lawyer would seem to be expanding the attorney-client privilege, rather than providing an exception to the waiver rule.

¶ 94    We nevertheless concur with the overwhelming weight of authority that would protect communications from Party *A* to Party *B*'s lawyer. First and foremost, it would be consistent

with *Waste Management*, which recognized that, within this common-interest relationship, the privilege includes both clients and both lawyers to the extent they share the common interest. Likewise, as already mentioned twice, Illinois law recognizes, within the attorney-client privilege umbrella, communications between a client and individuals assisting the attorney's efforts, such as an investigator or nontestifying mental-health consultant. *Knuckles*, 165 Ill. 2d at 135; *Knippenberg*, 66 Ill. 2d at 284. Party *B*'s lawyer, working pursuant to a common-interest agreement with Party *A*, does not stand in a materially different position from an investigator or consultant from Party *A*'s perspective.

¶ 95    And from a pragmatic standpoint, it would seem odd to protect Party *A*'s statements to its lawyer that the lawyer then communicates to Party *B*'s lawyer—about the only thing on which virtually every court agrees when it comes to the common-interest exception—but *not* allow Party *A* to skip the intermediary and communicate directly with Party *B*'s lawyer. Thus, we agree with the prevailing view that the common-interest exception to the waiver rule also covers a party's direct statements to a coparty's lawyer, in furtherance of the common interest and pursuant to a common-interest agreement to exchange confidential information. See *United States v. Almeida*, 341 F.3d 1318, 1324 (11th Cir. 2003) (finding weak justification for protecting one party's statements to other party's lawyer, but determining that overall purpose of common-interest exception is furthered by allowing parties to exchange information in this way).

¶ 96    It also seems to fall within the letter and spirit of the common-interest exception to include communications from the party to its own attorney that take place in the presence of the coparty's lawyer. A statement Party *A* makes to its own lawyer would obviously "otherwise qualif[y] as privileged" (Restatement § 76(1)), and the common-interest exception would prevent a waiver if that attorney-client conversation between Party *A* and its lawyer took place in the

presence of Party *B*'s lawyer, pursuant to the common-interest agreement. Again, if the law universally accepts the proposition that a party can communicate to its own lawyer, who then communicates that confidential information to the coparty's lawyer, without waiving privileges, there is no reason not to recognize the same protection when the coparty's lawyer happens to witness that attorney-client communication firsthand during a joint exchange, pursuant to a common-interest agreement. See *Square D Co. v. E.I. Electronics, Inc.*, 264 F.R.D. 385, 391 (N.D. Ill. 2009) (common-interest doctrine protects client's statement "made in confidence not only to his own lawyer, but to an attorney for a co-defendant for a common purpose" (quoting *For Your Ease Only, Inc. v. Calgon Carbon Corp.*, No. 02 C 7345, 2003 WL 1989611, at *2 (N.D. Ill. Apr. 28, 2003))).

¶ 97    The more difficult question is whether the doctrine protects communications directly from one party to the other party in common interest. As a general matter, of course, if one party speaks to another party, no attorney-client privilege would attach—there is no attorney present. We do not understand State Farm's response to the interrogatory to include O'Dea-State Farm communications that did *not* involve counsel; we read its response as stating that every communication "involv[ed]" counsel. And at oral argument, counsel for State Farm assured us that outside counsel for both O'Dea and State Farm were present for all joint conferences relevant to this matter.

¶ 98    So whether client-to-client communications, without the presence of counsel, are covered by the common-interest exception to the waiver rule is not an issue we must decide. But what about conversations between clients that take place with counsel present?

¶ 99    The prevailing rule seems to be that, as long as counsel is a part of the joint exchange of information, what one party says to another party is covered by the common-interest exception to

the waiver rule. See, *e.g.*, *Burkhead & Scott, Inc. v. City of Hopkinsville*, No. 5:12-CV-00198-TBR, 2014 WL 6751205, at \*5 (W.D. Ky. Dec. 1, 2014) (noting that "A conversation between co-clients in front of their attorney would be privileged so long as legal advice ... is sought"; though court used singular "attorney," each client was represented by separate counsel (internal quotation marks omitted)); *United States v. Lucas*, No. 1:09 CR 222, 2009 WL 5205374, at \*6 (N.D. Ohio Dec. 23, 2009) (doctrine " 'protects communications between two or more parties and their respective counsel' " (quoting *Travelers Casualty & Surety Co. v. Excess Insurance Co., Ltd.*, 197 F.R.D. 601, 606 (S.D. Ohio 2000))); *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 72 (S.D.N.Y. 2009); *Carfagno v. Jackson National Life Insurance Co.*, No. 5:99CV118, 2001 WL 34059032, at \*7 (W.D. Mich. Feb. 13, 2001).

¶ 100   When we consider the doctrine from a practical standpoint, it would be odd *not* to protect communications that occur between clients during a joint conference, pursuant to a common-interest agreement, with counsel present. First of all, in a live, joint conference—be it in-person or by audio or video conference—if both parties and both attorneys are engaged in the conversation, it will often be impossible to differentiate who is speaking to whom. One individual could interrupt another, or elaborate on a point, or follow up on a question previously asked. Group communications are rarely so stilted that they devolve into a strict question-and-answer format.

¶ 101   From an endless number of possible examples, here is one: A lawyer asks each client what they remember about some specific past event relevant to the lawsuit. Party *A* says what it remembers. Party *B* says it has a different memory. Party *A* tells Party *B* that Party *B* is confusing two different events and explains why. Party *B* responds that it is Party *A* that has its facts mixed up and explains why. In that exchange, it is hard to pin down who was talking to whom. Were

the statements between Party *A* and Party *B* client-to-client exchanges, or were they responding to the lawyer's question? The answer would probably be "yes" and "yes." Unless the conversation is taking place in a courtroom, or on the floor of the United States Senate, or in a formal panel discussion with a moderator, group communications are often difficult to break down into specific questions-and-answers in that way.

¶ 102   In a less formal setting, when lawyers and clients gather pursuant to their common interest in a conference designed to encourage the " 'free flow of information from client to attorney' " (*In re Grand Jury Subpoenas*, 902 F.2d at 249 (quoting *Schwimmer*, 892 F.2d at 243-44)), it would be unwise not to protect direct communications between clients. The ultimate point here is for the attorneys to join forces in preparing their case against the opposition, and they benefit from hearing what the clients can tell them about the facts, whether it comes from direct questions the lawyers ask or whether the clients interact directly with each other in the lawyers' presence.

¶ 103   So we would concur with many courts that have held that direct client-to-client communications are protected by the common-interest exception to the waiver rule when they occur pursuant to a common-interest agreement, they are in furtherance of that common interest, and they take place with counsel present.

¶ 104   We recognize that some communications are written, not oral, the most common example these days being e-mail. Again, with a doctrine that has spread to many different scenarios and engendered much disagreement along the way, we are striving to limit ourselves to what we must decide here. State Farm's response to the interrogatory indicated that no documents were responsive to the interrogatory, and thus we need not outline any parameters regarding written communications.

¶ 105    To summarize, the common-interest exception to the waiver rule protects from disclosure to third parties those statements made to further the parties' common interest, pursuant to a common-interest agreement, (1) by the attorney for one party to the other party's attorney, (2) by one party to the other party's attorney, (3) by one party to its own attorney, if in the presence of the other party's lawyer, and (4) from one party to another, with counsel present.

¶ 106                                   D

¶ 107    Once the trial court correctly recognized the existence of the common-interest exception to the waiver rule, the court saw no need to go further, finding it unnecessary to hold an *in camera* hearing or require a privilege log under Illinois Supreme Court Rule 201(n) (eff. July 30, 2014). The court seemed to find it clear that any communications identified by State Farm in that interrogatory response would be covered by the common-interest exception to the waiver rule.

¶ 108    When a discovery request "reveals on its face that the [information] sought fall[s] within the scope of an absolute privilege, compliance with Rule 201(n) *** serves no useful purpose and is *** entirely unnecessary." *Thomas v. Page*, 361 Ill. App. 3d 484, 497 (2005). But here, the interrogatory itself did not even mention attorneys, only communications from State Farm to O'Dea. And we are not entirely sure what State Farm meant by identifying "the involvement of counsel" in the postcomplaint communications between State Farm and O'Dea. Does that mean the statements were made to one of the lawyers? In the presence of the lawyers? With the lawyers' knowledge or approval but in their absence? Were any nonclients and nonattorneys present? None of this is clear to us on the record.

¶ 109    We do have a statement from oral argument by State Farm's lawyer, who told us that the joint conferences that occurred involved O'Dea, his lawyer, State Farm's outside counsel, and

State Farm's in-house lawyer. But even if a statement in oral argument were a satisfactory substitute for a privilege log—it is not—many questions remain. We do not know, for example, what was said in the joint conferences. Only statements that further the parties' common interest in defeating plaintiffs' lawsuit would be covered by the common-interest exception to the waiver rule. Anything said beyond that would not be covered; State Farm might have some other basis for refusing to disclose such information, such as relevance or some other privilege—which State Farm would be free to argue—but not the common-interest exception. And we cannot even be sure of the status of the individuals present in the meeting. For example, was the in-house counsel from State Farm a "client" or another lawyer? That may or may not be a complicated question under Illinois law, but we are certainly in no position to decide it at this stage.

¶ 110 The best course of action is to remand this matter to the trial court to conduct an *in camera*, communication-by-communication analysis. State Farm should be required to log each communication pursuant to Rule 201(n), and the court should conduct whatever analysis necessary to determine whether each communication falls within the common-interest exception to the waiver rule.

¶ 111 Federal district courts, considering the application of the common-interest exception to the waiver rule, typically conduct a communication-by-communication analysis to ensure that only protected communications are withheld from disclosure. See, *e.g.*, *Square D Co.*, 264 F.R.D. at 391 (application of doctrine "must be resolved on a communication-by-communication or document-by-document basis"). And Illinois courts considering the current "common-interest doctrine" have done the same. See *Waste Management*, 144 Ill. 2d at 201 (remanding to circuit court to "conduct an *in camera* inspection of all of the documents and exclude from disclosure those entitled to protection"); *Illinois Emcasco Insurance Co.*, 393 Ill. App. 3d at 790 (noting

that "*Waste Management* also provides for the trial court to conduct an *in camera* inspection to resolve disputes over which communications are privileged"). That course of action seems particularly appropriate here, given that the trial court was operating with a blank slate in terms of Illinois case law and we have now given at least some contours to this doctrine.

¶ 112 It may well be the case that every postcomplaint communication responsive to that interrogatory falls within the common-interest exception to the waiver rule. As we have explained above, it will depend on the substance of the statements, who said them to whom, and who else was present when the statements were made. As always, the burden of establishing the privileged nature of the communication will fall on the party asserting the privilege. *Cox v. Yellow Cab Co.*, 61 Ill. 2d 416, 419-20 (1975); *Thomas*, 361 Ill. App. 3d at 497. We also reiterate that we are aware that State Farm has lodged other objections to the information plaintiffs seek about these joint O'Dea-State Farm conferences that occurred after the lawsuit was filed, and State Farm remains free to pursue those other objections in addition to its assertion of the common-interest exception to the waiver rule.

¶ 113                                                III

¶ 114 Plaintiffs raise other discovery issues. For one, they argue that the trial court erred in granting a protective order. The protective order allowed either party to designate certain information confidential, including proprietary information and private information about insureds, such that opposing counsel could use the information for the purposes of litigation only and otherwise had to keep it confidential. Plaintiffs say that State Farm advanced no legitimate interest for keeping this information secret. (Plaintiffs agreed to the redaction of Social Security numbers regarding insureds.)

¶ 115   The parameters of a protective order are entrusted to the trial court's discretion. *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 224 (2000). "Similar to other discovery matters, the trial court is in the best position to weigh the competing needs and interests of the parties affected by a protective order." *Hall v. Sprint Spectrum L.P.*, 368 Ill. App. 3d 820, 823 (2006). "Absent an abuse of discretion, an order concerning discovery will not be disturbed on appeal [citation], and protective orders are no exception." *Id.*

¶ 116   We find no error here. First, we do not see how this protective order played any role in the ultimate outcome of this lawsuit against State Farm, much less how it would affect the ongoing litigation against O'Dea. The protective order did not prevent plaintiffs from using any information in the litigation; they were just prohibited from otherwise making it public. And as State Farm notes, the protective order contained a mechanism whereby plaintiffs could object to the designation of a particular document as confidential, yet plaintiffs never did so. From this, we can see no way in which this protective order played any role in the outcome of the litigation.

¶ 117   And beyond that, in the single page they devoted to this subject in their brief, plaintiffs have provided nothing to persuade us that the trial court's reasoning was so far beyond the bounds of reason that its protective order constituted an abuse of discretion. From our view, the trial court tried to give plaintiffs access to the information while otherwise protecting confidential information of people who were not parties to the lawsuit. We uphold this ruling by the trial court.

¶ 118   Plaintiffs further argue that the trial court erred in limiting plaintiffs' discovery. On December 18, 2012, the trial court ordered that "[a]ll discovery not related to the named plaintiffs is stayed until further court order." The trial court explained that the class action would not lie against State Farm unless the named plaintiffs could make out a claim against it. See

*Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 139 (2005) ("It is well settled that a class cannot be certified unless the named plaintiffs have a cause of action." (Internal quotation marks omitted.). The trial court's order did not place any limitations on discovery related to the named plaintiffs' claims, only to potential claims beyond the class.

¶ 119   Illinois Supreme Court Rule 201 governs discovery and states, in relevant part: "(e) Sequence of Discovery. Unless the court upon motion, for the convenience of parties and witnesses and in the interests of justice, orders otherwise, methods of discovery may be used in any sequence, and the fact that a party is conducting discovery shall not operate to delay any other party's discovery." Ill. S. Ct. R. 201(e) (eff. May 29, 2014). The trial court is given great latitude in determining the scope of discovery, but the scope of permissible discovery is not unlimited; in exercising its discretion, the trial court must balance "the needs of truth and excessive burden to the litigants." (Internal quotation marks omitted.) *Y-Not Project, Ltd. v. Fox Waterway Agency*, 2016 IL App (2d) 150502, ¶ 43. This court will not disturb a discovery order absent an abuse of discretion. *Id.*

¶ 120   State Farm cites several cases where this court found no abuse of discretion in the trial court conducting discovery in a sequenced approach. See, *e.g.*, *Atwood v. Warner Electric Brake & Clutch Co.*, 239 Ill. App. 3d 81, 87-88 (1992) (in cases consolidated for discovery purposes, trial court had discretion to require plaintiffs to certify by date certain that each plaintiff's claim and its cause had been identified, and that cause had been exposure to material that was subject of cases); *Van Hyning v. Hyk*, 78 Ill. App. 3d 721, 723 (1979) (trial court did not abuse discretion in requiring plaintiff to produce expert reports before defendant was deposed); see *Adkins Energy, LLC v. Delta-T Corp.*, 347 Ill. App. 3d 373, 381 (2004) (no abuse of discretion where

trial court stayed discovery until it ruled on motion to dismiss because, if cause of action had not been stated, discovery would have been unnecessary).

¶ 121   We find no abuse of discretion in the trial court allowing discovery first as to the named plaintiffs to ensure that plaintiffs had a valid claim against State Farm before allowing discovery into a broader category and scope of information relating to potential class members. We cannot say that the ruling was so arbitrary or unreasonable that no rational judge would have done the same thing. We uphold that ruling.

¶ 122                                                    IV

¶ 123   There are several remaining issues relevant to this appeal. Plaintiffs say that the trial court incorrectly dismissed the abuse-of-process counts against State Farm for failing to plead certain factual information. Plaintiffs complain that the trial court erred in granting summary judgment to State Farm on counts relating to civil conspiracy and malicious prosecution.

¶ 124   Because we are remanding this matter for additional proceedings regarding the common-interest exception to the waiver rule, it would be premature for us to rule on these other issues. If additional information becomes discoverable after the trial court completes its *in camera* examination, it is conceivable that plaintiffs could plead additional facts relevant to abuse of process, or that they might have additional information to support their claims of civil conspiracy or malicious prosecution to counter State Farm's motion for summary judgment. There is simply no way for us to know at this stage.

¶ 125   We thus vacate both the dismissal of the abuse-of-process claims against State Farm and the grants of summary judgment entered in State Farm's favor. We do so without expressing any

opinion on the correctness of the trial court's rulings on those claims. We do so only because of the possibility of additional factual information coming to light following our remand.

¶ 126   Finally, plaintiffs filed a motion for this court to take judicial notice of the proceedings below. Specifically, plaintiffs requested that we take judicial notice of the filing of O'Dea's motion for clarification of paragraph 1(a) of the August 21, 2015 court order regarding class discovery.

¶ 127   Briefly stated, this motion was relevant to the merits of some of the claims that were the subject of either dismissal or summary judgment, orders that we have now vacated for the reasons stated above. Thus, we deny plaintiffs' motion as moot.


¶ 128                                      V

¶ 129   We affirm the trial court's ruling that recognized the common-interest exception to the waiver rule. We remand this matter to the trial court to conduct whatever proceedings necessary to determine whether this doctrine protects communications between O'Dea, State Farm, and their lawyers that occurred after the filing of this lawsuit in their joint conferences. We affirm the trial court's other discovery rulings. We vacate the dismissal of the abuse-of-process claims and the grants of summary judgment in State Farm's favor.

¶ 130   Affirmed in part, vacated in part, remanded with instructions; motion denied.